COMPANIA RON CARIOCA DESTILERIA, Inc.

v.

UNITED STATES.
No. 65–55.

United States Court of Claims.
Dec. 3, 1958.

Norman J. Morrisson, Washington, D. C., for plaintiff. William Montgomery Smith, Washington, D. C., on the brief.

Benjamin H. Pester, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., for defendant. James P. Garland, Baltimore, Md., and David A. Wilson, Jr., Washington, D. C., on the brief.

WHITAKER, Judge.

Plaintiff sues to recover $12,387.12 paid in August and September 1946 to the United States deputy collector of internal revenue at San Juan, Puerto Rico. At that time plaintiff, engaged in the business of producing beverage distilled spirits, removed a quantity of such spirits from a bonded warehouse in Puerto Rico. Upon removal, since it contemplated shipment of these spirits to the United States, plaintiff paid to the defendant the amount of the United States internal revenue taxes which would be due the defendant upon entry into the United States.

However, the plaintiff did not immediately ship this entire quantity of spirits. If it had, this suit never would have arisen. On the contrary, plaintiff on May 20, 1952, still held 1,332.0475 proof gallons in his warehouse in San Juan. At this time, having decided not to ship these remaining spirits, plaintiff asked and received permission from the Department of Finance of Puerto Rico to return them to its bonded warehouse as non-tax paid spirits. The Federal strip stamps were destroyed under the supervision of an internal revenue agent, and the goods were re-entered into bond on June 19, 1952.[1]

On August 6, 1952, plaintiff filed a claim for refund with the deputy collector of United States internal revenue in San Juan for the money paid in August and September 1946 on the 1,332.0475 proof gallons which had been re-entered into bond. The Commissioner denied this claim on the ground that it was barred under section 3313 of the Internal Revenue Code of 1939, which requires that a claim be filed within four years from the payment of the tax. 26 U.S.C. § 3313, 1952 ed.

The sole question before this court is whether the plaintiff's payment in 1946 was the payment of a "tax" within the meaning of section 3313, or merely a "deposit" for a tax liability which probably would arise at some future date. If it was the payment of a tax, plaintiff's claim is barred by the statute of limitations applicable to suits for the recovery of taxes; if it was merely a deposit on account of a liability which was expected to accrue in the future, but which never accrued, a different statute of limitations is applicable, under which plaintiff's claim is not barred. Was the payment a deposit or the payment of a tax?

As is pointed out by plaintiff, the internal revenue laws of the United States do not apply to Puerto Rico. The Second Organic Act ( § 9, Act of March 2, 1917, 39 Stat. 954) states as follows:

> "The statutory laws of the United States not locally inapplicable, except, as hereinbefore or hereinafter

---

[1] Later, on August 23, 1954, this inventory was destroyed in Puerto Rico, pursuant to authority of the Puerto Rican Government, for reasons not explained by the record and immaterial here.

otherwise provided, shall have the same force and effect in Porto Rico as in the United States, except the internal-revenue laws: Provided, however, That hereafter all taxes collected under the internal-revenue laws of the United States on articles produced in Porto Rico and transported to the United States, or consumed in the island shall be covered into the treasury of Porto Rico." 48 U.S.C.A. § 734.

The United States revenue laws apply only when the goods actually enter the United States. Section 3360(a) of the Internal Revenue Code of 1939 (26 U.S. C. § 3360(a) 1952 ed.) states:

"Except as provided in section 3123, articles of merchandise of Puerto Rican manufacture *coming into the United States and withdrawn for consumption or sale* shall be subject to a tax equal to the internal revenue tax imposed in the United States upon the like articles of merchandise of domestic manufacture." [Emphasis supplied.]

However, for the convenience of the manufacturer, the exporter *may* pay before shipment from Puerto Rico the amount of duties and taxes which will be due when the goods enter the United States. 26 U.S.C. § 3360(b) (2), 1952 ed. This subsection provides:

"All United States internal revenue taxes imposed by law on articles of Puerto Rican manufacture coming into the United States for consumption or sale may be paid by affixing to such articles before shipment thereof a proper United States internal revenue stamp denoting such payment."

■ It is obvious that Congress in the enactment of this subsection did not mean to require the payment of the taxes before shipment. It merely permitted prepayment for the convenience of the taxpayer. Nor does a tax liability arise from the fact that the insular government, by section 29 of the Spirits and Alcoholic Beverages Act of Puerto Rico

(Act of June 30, 1936, as amended by the Act of April 20, 1946), 13 L.P.R.A. § 1606, made this payment mandatory rather than permissive. Obviously the insular government cannot convert a permission granted by the United States to pay a tax levied by it before its due date into a duty to pay it before it becomes due.

■■ There was no duty to pay the United States tax on beverage distilled spirits until they reached the United States. Thus, a payment before that time of taxes expected to accrue in the future could not have been a payment of taxes "erroneously or illegally assessed or collected," for the collection of which plaintiff could have filed a claim for refund. Accordingly, section 3313, standing alone, has no effect upon the plaintiff here, for the refund sought was not a refund of a tax "erroneously assessed", but of money deposited in anticipation of a tax liability which never accrued. Schenley Import Corp. v. United States, 121 F.Supp. 646, 129 Ct.Cl. 327.

■■ Until an assessment is made for a tax alleged to be legally due, the statute of limitations does not begin to run. Rosenman v. United States, 323 U. S. 658, 65 S.Ct. 536, 89 L.Ed. 535. The Government's contention that subsection (c) of 26 U.S.C. § 3770, read in conjunction with section 3313, supra, bars recovery, is without merit. Section 3770 (c) states that "an amount paid as a tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid." It has been held by three different courts of appeals that this does not affect the time the statute of limitations begins to run on the pre-payment of a possible future tax liability. Thomas v. Mercantile Nat. Bank, 5 Cir., 204 F.2d 943; United States v. Dubuque Packing Co., 8 Cir., 233 F.2d 453; Budd Co. v. United States, 3 Cir., 252 F.2d 456. It could not have begun to run at the time the payment was made in this case, not only because there had been no assessment of a tax, but also because at the

time of the payment there was no assertion of a present liability for the tax. This liability would not accrue until shipment to the United States and withdrawal for consumption or sale. Shipment having been abandoned, no tax has accrued or will ever accrue. Section 3770(c) does not apply to a case where there is no assertion of a present liability at the time the payment is made.

Section 3770(c) does not expressly say that the statute of limitations begins to run at the time an amount is paid as a tax, if paid prior to assessment, and there is nothing in the language to indicate such an intention, nor that the statute of limitations was even in mind. The Committee report shows that it was the matter of interest that was in the mind of Congress, and not the statute of limitations. S. 221, 78th Congress, 1st Session, page 34 (1943 Cum.Bull. 1314, 1339) reads:

"The income tax law requires the taxpayer to make a return of his tax and to pay the tax so returned. These requirements contemplate that in the discharge of these duties at the time, place, and manner prescribed honest mistakes will occur—mistakes both as to the amount of the tax and as to the existence of any tax liability; and that such honest mistakes made incident to the bona fide orderly compliance with the actual or reasonably apparent duties of the taxpayer are to be corrected under the provisions of law governing overpayments. In the opinion of your committee, existing law so provides. The language of certain court decisions (holding that certain payments, not made incident to a bona fide and orderly discharge of actual or reasonably apparent duties imposed by law, are not overpayments and accordingly that interest is not payable) has been read by some as meaning that no payment can result in an overpayment if no tax liability actually existed. Your committee does not believe that such reading is in any way a statement of existing law. The provisions of the bill, however, emphasize the need for clarity in this regard."

 Since we are of the opinion that section 3770(c) was not intended to affect the statutory period for the recovery of taxes erroneously paid, the holding in Rosenman v. United States, supra, governs the decision of this case. This was that the statute does not begin to run until the assessment is made, even though the payment is made prior to assessment. No assessment of the tax having been made in this case, the claim is not for the recovery of a tax erroneously assessed or collected, but for money had and received. The statutory period within which such suits must be brought is six years.

Judgment will be entered in plaintiff's favor for $12,387.12.

It is so ordered.

JONES, Chief Judge, MADDEN, Judge, and McLAUGHLIN, District Judge, concur.