**SHELTER ISLAND AND GREENPORT FERRY COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 65C17.**

United States District Court
E. D. New York.

Sept. 9, 1965.

Stephen A. Wise, New York City (Layton, Niedergang & Wise, New York City, of counsel), for plaintiff.

Herman Wilson, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Attys., Dept. of Justice, and Joseph P. Hoey, U. S. Atty., and George L. Barnett, Asst. U. S. Atty., of counsel), for defendant.

DOOLING, District Judge.

The statute of limitations barring claims for the recovery from the Government of overpayments of taxes is shorter than the general limitation barring non-tortious actions against the Government. Here the plaintiff paid amounts to the Government under the impression that it owed them as taxes on the transportation of freight. In fact, there was no tax. It had been repealed. Plaintiff did not file claims for refund within the three years after it filed the returns of "tax" and paid the amounts now sought to be recovered [26 U.S.C.A. § 6511(a)], but it has sued (save for minor amounts) within the six years [28 U.S.C.A. § 2401 (a)] generally allowed for suits "upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort" [28 U.S.C.A. §§ 1346(a) (2), 1491].

Plaintiff contends that the plain words of the tax statute bar refund claims after three years only (a) where a "tax" is in fact "imposed", and (b) where there is a "taxpayer" who is "required to file a return"; that, in consequence, the refund claim was timely and the suit properly and timely filed under 28 U.S.C.A. § 1346 (a) (1), allowing certain tax refund suits to be filed in the District Courts; and that, alternatively, the suit lies, as one for money had and received and in conscience returnable, under the Government's more general consent to be sued in the District Courts in cases involving less than $10,000 which sound in express or implied contract or are for damages and do not sound in tort [28 U.S.C.A. §§ 1346 (a) (2), 2401(a)]. Cf. Compania Ron Carioca Destileria v. United States, 1958, 168 F.Supp. 546, 144 Ct.Cl. 66. The Government insists that the claim is either one for a refund of an amount paid as tax and governed by the tax limitation, or else it is a claim on a contract implied in law rather than in fact and will not lie against the Government at all. Cf. United States v. Minnesota Mut. Inv. Co., 1926, 271 U.S. 212, 217, 46 S.Ct. 501, 70 L.Ed. 911.

On defendant's motion for a dismissal and plaintiff's cross motion for judgment, it is concluded that the Court has jurisdiction of the case, that the claim is not barred by the statute of limitations for the most part, and that plaintiff is entitled to summary judgment to recover certain of the payments as due it upon implied contract.

Until August 1, 1958, plaintiff was subject to an excise tax on the transportation of property imposed by Internal Revenue Code Sec. 4271 (56 Stat. 979). The section imposing the tax was repealed by Public Law 85–475 effective August 1, 1958 (72 Stat. 260). Nevertheless, plaintiff continued to file returns and make payments until 1964.

The payments of tax were reported quarterly on Excise Tax Form 720, a general form covering a multitude of retailers' and manufacturers' taxes and taxes on facilities and service, and products and commodities. Each tax is given but a single line on the form. The line describes the tax, states the tax rate in most cases, leaves room to insert the tax amount, and then gives an "IRS No." to

the tax. Before the repeal the line on Form 720 for the tax on transportation of property described the tax as applying to the "Transportation of property including coal". In the column for tax rate appeared a footnote reference, i. e., "(1)" and the footnote said "See instructions". The "IRS No." of the tax was given as "27". Form 720 is a one page form, made up in sets of a file copy and taxpayer's copy joined at the top along a line of perforations. The instructions, printed on the reverse of the forms and continuous from the reverse of the original to the reverse of the taxpayer's copy explained the application of the various excises and the filing procedure.

The procedure, as explained on the reverse of the form, and as appears from the copies of the returns, was that the District Director mailed a "preaddressed form" to each person who "once filed a return". Each such preaddressed form gave the taxpayer an identification number, in plaintiff's case 11–1323030, indicated the months to be covered by the return and stated the due date of the return.

It does not appear that plaintiff was ever liable for or paid any excise tax other than the tax on the transportation of property—while it was in effect. None of the returns in question, ten of them filed quarterly in and between October, 1958 and January 1961, embraced any tax for which plaintiff was liable—except the October 1958 return which reported tax on the July 1958 transportation of property. The first two preaddressed returns filed after the repeal continued to carry a line for a tax on the "Transportation of property; including coal" and plaintiff listed its supposed liability on that line.

There was no place for tax on the transportation of property on any of the Revised preaddressed Forms 720s sent to the taxpayer for the eight quarters, April 1959 through January 1961. The line on the form above the line formerly used by the property transportation tax continued to be used for "Transportation of persons, etc. [Rate] 10% * * * [IRS No.] 26"; that line remained unchanged from earlier Form 720s. In all its later filings, except for the return for the first quarter of 1959, filed in April 1959 (in which plaintiff may have left the tax lines blank and simply entered its supposed tax in the "Total" of the return) plaintiff inserted its supposed tax liability on the "Transportation of persons, etc." line. In the return filed in April 1960 for the first quarter of 1960, plaintiff typed into the space above the "Transportation of persons, etc." line, and somewhat obscuring the word "persons", the single word "vehicles" and typed "3%" into the rate column above the printed 10%. In the next two quarterly returns the only alteration, or supplementation, of the form was to type "3%" above the printed 10%. In the latest dated of the returns in question, there is no reference to "3%" or to "Vehicles".

Upon receipt of the returns accompanied by remittances (in the form of depositary receipts for the first two months of each quarter and the balance payment for the third month of each quarter) aggregating the amount set forth on the returns as the "net tax due", the District Director made assessments in the amounts of the remittances. The face of each return was stamped with the "account number" assigned to the account set up on the basis of the return and that number was also the assessment number. The remittances received were applied in satisfaction of the assessments so made.

The District Director's records of the receipt and deposit of each of plaintiff's remittances (except, perhaps, that of the second quarter of 1960 *) show the tax

---

* The copy of the record supplied for the second quarter of 1960 does not show the various collections arranged in separate columns headed with "IRS Nos." However, the totals of the collections shown, including the collection from plaintiff, are shown in handwriting as distributable among seven "IRS Nos.", one of which is "26" and none of which is "27".

which the District Director treated himself as receiving, and show also, by easy inferences, the account and assessment number related to each receipt and deposit of a remittance. The collections for the third and fourth quarters of 1958 were treated as collection of ".27", the "IRS No." of the tax on the "Transportation of property including coal"; the collection record thus corresponds with the returns for the first two quarters in question. The collections for the remaining quarters are treated as collections of ".26", the "IRS No." of the tax on the "Transportation of persons etc."; the collection record thus corresponds with the returns for the last eight quarters, disregarding the three references to "3%" and the one reference to "vehicles", both of which are incompatible with the transportation tax as then in effect.

Plaintiff filed claims for refund of the amounts here in question on September 9, 1964. The claims were rejected on October 23, 1964, on the sole ground that the claims for refund had not been filed within three years from the time the returns were filed, or two years from the time the tax was paid, whichever was the later [26 U.S.C.A. § 6511(a), (b)]. The present suit was instituted January 15, 1965.

■■ The Government now states that even if the claim of plaintiff were otherwise allowable, plaintiff has not shown, nor has the Government by audit verified, the fact that plaintiff bore the burden of the tax rather than passed it on to its customers. But on a motion for summary judgment the Government must do more than pray time for an audit where, as here, plaintiff avers the fact and is able to show that for the period subsequent to that in suit the Government made an audit, expressed itself as satisfied that plaintiff had borne the burden of the tax and indicated that refund would be made in ordinary course. If plaintiff's claim is otherwise good, the "passing on" point would not preclude relief on the present showing.

■■ Plaintiff's first contention rests on a precise reading of the tax statute. Section 6511(b) of the Internal Revenue Code authorizes refunds or credits only if a timely claim for refund has been filed. Section 6511(a) provides the time limit, and the only applicable time limit in the tax statutes, upon the filing of the required claims for refund. It enacts that a claim for refund or credit "of an overpayment of any *tax imposed* by this title [Title 26] in respect of which *tax* the *taxpayer is required to file a return* shall be filed by the *taxpayer* within 3 years * * *" (Emphasis added.) Since, plaintiff argues, there was no imposition of tax, nor any return requirement, the time limit does not apply, the claim was therefore timely and the present suit properly and timely commenced under 28 U.S.C.A. § 1346(a)(1) and Section 7422 of the Internal Revenue Code (26 U.S.C.A. § 7422). The Government answers that unless plaintiff relies on and insists that the amounts sought are taxes and recoverable as such, there is no provision of law to which plaintiff can point as authorizing a recovery of the amounts. Since, it is argued, the only statutes giving plaintiff a substantive right of recovery limit the time of suit to three years, plaintiff's claim is time-barred.

While plaintiff's argument is not without attraction, the tax statutes will not support the suggested interpretation. The statutes certainly do not contemplate specifically payment and refund of repealed taxes, but they are of general application and are as well adapted to deal with the special case of the mistakenly paid repealed tax as with the general case of overpayments of unrepealed taxes. If repealed taxes paid by mistake are within the circuit of the tax refund sections at all, there appears to be no reason why they should not operate in that circuit of sections precisely as would an overpaid unrepealed tax. The alternative to so applying the sections is a stultifying conclusion that although such taxes are within the sections as author-

izing refunds and refund suits, the sections authorize refund claims to be filed at any time and lawsuits to be filed promptly after rejection of such time-free refund claims. It seems clear that despite the literal inapplicability of the language of Section 6511(a), if the refund sections apply at all to the present case, the time limitation applies just as if the tax had not been repealed and the returns filed had been required returns disclosing overpayments. Something like that is the intent, where a tax exists, of the provision that payments of "tax" are statutory "overpayments" of "tax" even if there is no tax liability in respect of which the amount is paid. 26 U.S.C.A. § 6401(c).

That the tax refund sections have application may be not unwelcome where they are timely invoked, for then they supply a ready authority for making refunds that, otherwise, appears to be difficult to locate in the statutes. But plaintiff contends alternatively, on the assumption that the tax sections do not apply, that there may be a recovery under the general consent of the Government to be sued on either express or implied contract or for non-tortious damages. Bluntly put, the argument is that the Government must certainly be under a duty to repay the money and, since the tax statutes in terms do not apply, the more general provision must apply, with its six year statute of limitations.

The repeated statement that the general consent to be sued does not extend to contracts "implied in law"—that is, to the classic quasi-contract and unjust enrichment counts (United States v. Minnesota Mut. Inv. Co., supra; Sutton v. United States, 1921, 256 U.S. 575, 581, 41 S.Ct. 563, 65 L.Ed. 1099; Alliance Assurance Co. v. United States, 2d Cir. 1958, 252 F.2d 529, 532; First National Bank of Emlenton, Pa. v. United States, 3rd Cir. 1959, 265 F.2d 297, 300; cf. Forest of Dean Iron Ore Co. v. United States, 1946, 65 F.Supp. 585, 106 Ct.Cl. 250; Holbert v. United States, E.D.Tenn.1958, 167 F.Supp. 179, 182)—appears to stand as a bar to recovery despite the existence of cases in which recoveries have been allowed which, if they are not quasi-contractual, seem at least as remote as quasi-contract from any actual implication in fact of a contractual promise. Cf. United States v. Cornell Steamboat Co., 1906, 202 U.S. 184, 26 S.Ct. 648, 50 L.Ed. 987; United States v. Atlantic Mut. Ins. Co., 1936, 298 U.S. 483, 56 S.Ct. 889, 80 L.Ed. 1296; United States v. Atlantic Dredging Co., 1920, 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735. Note United States v. Dow, 1958, 357 U.S. 17, 21, 78 S.Ct. 1039, 2 L.Ed.2d 1109; Hurley v. Kincaid, 1932, 285 U.S. 95, 104, 52 S.Ct. 267, 76 L.Ed. 637; John Horstmann Co. v. United States, 1921, 257 U.S. 138, 145–146, 42 S.Ct. 58, 66 L.Ed. 171; Tempel v. United States, 1918, 248 U.S. 121, 129–130, 39 S.Ct. 56, 63 L.Ed. 162.

The strict application of the tax statutes of limitation has, by calling on "equitable" concepts cognate to quasi-contract, been tempered, although in situations somewhat removed from the present one in theory. Stone v. White, 1937, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, permitted the Government to set off in defeat of a trustee's suit for refund of tax paid on certain trust income the Government's time-barred claim against the income beneficiary for the tax the beneficiary had been under a duty to pay on the same income. The Court indicated that a taxpayer plaintiff in a refund suit can recover only if it is equitable that he should and not if the recovery would create an unjust enrichment. The case does not say that taxes are recoverable where it is "equitable"; it does emphasize that even an apparently perfect right under the tax statute to recover a tax must also be a right to recover *ex aequo et bono*.

Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 presented a more nearly affirmative use of the notion of an "equitable" basis of relief. Where Stone presented "related taxpayers", Bull presents "related taxes". An estate tax was erroneously exacted on certain estate income and the statute of limitations ran on the right to recover it.

The income tax was assessed on the same amount of money; the taxpayer paid it, and sued to recover it or, alternatively, to recover (as a "credit" against the income tax liability, if due) the amount of estate tax paid on the money involved. Recovery was allowed, essentially on the notion that the unfiled "claim" to recover the estate tax was a valid equitable offset to collection of the income tax and, hence, made the collection excessive and, *pro tanto,* recoverable. Here something approaching the recovery of a barred tax seems to be countenanced. But on the Court's analysis, the procedural base of the recovery was the timely suit for the income tax which, although due by statute, yet had not, in equity, been collectible.

Stone and Bull do subject the tax statutes of limitation to equitable restrictions but in each case the resort was to a familiar defensive doctrine of equitable recoupment or offset that negated—*pro tanto* or entirely—an otherwise formally perfect and timely statutory claim for refund (Stone) or demand for payment (Bull). Bonwit Teller and Co. v. United States, 1931, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018, may, again, seem to evade the tax statutes of limitation in sustaining a suit on a certificate in the nature of a certificate of overassessment as one on an account stated by the certificate rather than as a suit to recover an overpaid tax. See United States v. A. S. Kreider Co., 1941, 313 U.S. 443, 448, 61 S.Ct. 1007, 85 L.Ed. 1447; R. H. Stearns Co. v. United States, 1934, 291 U.S. 54, 65, 54 S.Ct. 325, 78 L.Ed. 647. The case, in retrospect, may be said to rest on the plainest base for the implication of a promise to pay, a formal acknowledgement of indebtedness. Compania Ron Carioca Destileria, supra, and Schenley Import Corp. v. United States, 1953, 121 F.Supp. 646, 129 Ct.Cl. 327, are also cases in which on the facts, the recoveries could be said to be recoveries not of tax payments but of amounts more nearly akin to security deposits made in anticipation of tax liabilities and never paid over to the United States in satisfaction of purported or supposed tax liabilities. The implication in fact of a promise to repay is then clear in such cases. In each of these cases subjection to over literal interpretation is avoided by supplementing the statute with familiar doctrine. Yet no one of the cases mitigating the rigor of the tax statutes of limitation goes the length of holding that the voluntary payment of a tax not due gives rise to a right to recover it on implied contract or as damages for nontortious injury, or that, apart from the express remedial provisions of the tax statutes, there is a general right to recover such payments as, simply, money had and received to the payor's use.

If neither the tax statutes nor the cases that have interpreted them express a right to relief, it may be that, at least, the tax statutes are inapplicable and the question is the plain one of the recoverability, apart from any remedial provision of the tax laws, of payments made to the Government under a mistake as to the existence of a tax, which had been repealed, and which are received and retained by the Government (with possible minor exceptions) under a mistaken belief that the payor owed the amounts as another tax that had not been repealed. That amounts to saying that plaintiff's claim is really one to recover a payment made because of plaintiff's erroneous belief, induced by mistake of fact, that it was thereby performing a duty (Restatement, Restitution, Sec. 19, comment h), for the mistake here, though related to legal matter, was a mistaken belief about the continued existence of the obligation to pay the tax, a mistake on a point of fact. [Cf. Restatement, Restitution, Secs. 7, 44, 45 (dealing with a case in which the payee has an honest though mistaken claim to payment), 46(c), 75 (note comment on Subsection 1, a)]. The Government at no time after August 1, 1958, claimed that a tax was due on the transportation of property, and it retained the money only because it too mistook the nature of the payment.

It is simply exact to say that the payments had nothing to do with taxes or the policies that require that the revenues and claims about them be quickly determined. Here there were no revenues and no possibility of a controversy over the interpretation or application of the revenue laws. There was only gross mistake. One case at least has held that where a "tax" payment falls outside the letter of the tax statutes of limitation, the six year statute of 28 U.S.C.A. § 2401(a) applies. Jeromer v. United States, S.D.N.Y.1955, 138 F.Supp. 239. (The taxpayer lost on the merits: S.D. N.Y.1957, 155 F.Supp. 851). There are isolated cases in which funds in the possession of the United States without right have been restored without too deep inquiry into the wavering line between quasi-contract, true contract and what in other contexts would be called waiver of tort. Cf. Smith v. Snyder, 1950, 86 U.S.App.D.C. 166, 181 F.2d 278; Kirkendall v. United States, 1940, 31 F.Supp. 766, 90 Ct.Cl. 606. As early as Knote v. United States, 1877, 95 U.S. 149, 156–157, 24 L.Ed. 442, the Court indicated in *dictum* that the statutory description of claims upon contract "express or implied" extended to cases in which the United States received money charged with a duty to pay it over or which the claimant had a lawful right to "when it was received, as in the case of money paid by mistake". United States v. State Nat. Bank, 1877, 96 U.S. 30, 35–36, 24 L.Ed. 647, somewhat similarly assumed that the United States is under a duty to restore "money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund." The Court treated the case before it, one rooted in the fraud of a Government agent through whose act the Government became possessed of the claimant's property, as rested on implied contract with the United States binding them "in virtue of their corporate character. Their sovereignty is in no wise involved." Dooley v. United States, 1901, 182 U.S. 222, 224–230, 21 S.Ct. 762, 45

L.Ed. 1074, implicitly treats illegally exacted fiscal demands as giving rise to valid claims under the "express or implied" contract or non-tortious damages language common to 28 U.S.C.A. §§ 1346 (a) (2) and 1491 in those cases in which the revenue laws provide no remedy or no exclusive remedy.

■ It seems, therefore, that the general right to relief does exist in the narrow class of case in which there is no intimation of a Governmental belief, even a mistaken belief, that it was entitled to the funds, no hint of a substantive right to retain the funds, and the claim to them rests on an undenied claim of ownership and of a right to receive back the money because paid by mistake, or obtained by a faithless officer's fraud, or through a mistaken exercise of Governmental coercion. Implicitly, the undenied ownership and the absence of a claim of right to retain must be taken to raise a promise of repayment.

■ There are, finally, the spectres of "voluntary" payment or payment under "mistake of law" as being a bar (Clift & Goodrich, Inc. v. United States, 2d Cir. 1932, 56 F.2d 751; Ohio Locomotive Crane Co. v. Denman, 6th Cir. 1934, 73 F.2d 408; Wourdack v. Becker, 8th Cir. 1932, 55 F.2d 840; Cf. Stahmann v. Vidal, 1938, 305 U.S. 61, 64–65, 59 S.Ct. 41, 83 L.Ed. 41). The "discreditable" objection (as Judge Learned Hand called it) that a mistake is one of law and not remediable is unavailable here where the mistake is not about the legal effect of understood acts but is a mistake about the continued existence of a statute. That is a mistake about a fact, a fact that is not less a fact because it relates to the existence or non-existence of a statute. Nor can plaintiff be turned aside by treating it as a "volunteer". The cases relate to payments "volunteered" by one person on account of another's tax liability; they are cases in which the volunteer's payment is applied to discharge the debt of another; to re-

turn such a volunteer's money loses the payee the formal satisfaction of its claim and loses or jeopardizes its claim against its debtor, because, for example, its time to sue its debtor may, meanwhile have expired.

 It is concluded, therefore, that plaintiff's suit will lie under 28 U.S.C.A. § 1346(a) (2) as a suit to recover the payments made within the six years next preceding the commencement of the action. The provisions of the tax statutes, not literally applying to nonexistent taxes nor to returns and payments that are not required returns or payments creditable to any revenue account of the Government, are not read as excluding (by nonprovision) any relief for such mistaken payments as are here involved. The grants of jurisdiction and consent in 28 U.S.C.A. §§ 1346(a) (2) and 1491 are not read as being so narrowly phrased as to exclude relief here on implied contract.

Since, however, the suit is under 28 U.S.C.A. § 1346(a) (2) and is not a tax case under Sec. 1346(a) (1), interest is not recoverable from the dates of payment of the tax as provided in tax cases by 28 U.S.C.A. § 2411(a). Nor is the Government's duty to repay to be considered as matured earlier than September 9, 1964, when plaintiff applied to get its money back. Any pre-judgment interest is allowable as if under 28 U.S.C.A. § 2516, since the case is in the District Court under Sec. 1346.

Accordingly, it is

Ordered that the motion of defendant to dismiss the action on the ground that the Court is without jurisdiction is denied, and it is further

Ordered that plaintiff's motion for summary judgment is granted to the extent of the amounts paid after January 11, 1959, and that the Clerk shall enter judgment that plaintiff recover of defendant $8,152.84 with interest as provided by law.

