**Archibald KREIGER and Claire R. Kreiger, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 75–2132.**

United States Court of Appeals, Third Circuit.

Argued May 26, 1976.

Decided Aug. 2, 1976.

Ambrose J. Hinnegan, Haddonfield, for plaintiffs-appellees.

Scott P. Crampton, Gilbert E. Andrews, Michael L. Paup, Robert A. Bernstein, Washington, D.C., Jonathan L. Goldstein, U. S. Atty., Newark, N.J., for defendant-appellant.

Before ADAMS and HUNTER, Circuit Judges, and MURRAY M. SCHWARTZ, District Judge.

PER CURIAM:

Plaintiffs initiated this action in April, 1973 under 28 U.S.C. § 1346(a)(1) [1] to recov-

---

1. 28 U.S.C. § 1346:
 United States as defendant
 (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without au-

er approximately $8,000 in income taxes which they alleged were erroneously collected for the taxable year 1966. The government, before answer, moved to dismiss for want of jurisdiction, on the ground that the suit had not been preceded by a claim for refund filed within the time period required by statute. The district court, after hearing, denied the motion to dismiss.[2] The government subsequently filed an answer and an amended answer denying the appropriate paragraphs of the complaint, but did not press any defense other than the one rejected on the motion to dismiss. After a hiatus of nearly two years, judgment was entered for plaintiffs in the amount claimed, plus interest.[3]

On appeal, the government does not attempt to contest either the fact or the amount of the overpayment. We agree, however, with appellant's claim that the district court erred in denying the motion to dismiss, and therefore reverse.

The taxable year in question ended August 31, 1966, and plaintiffs filed their return and paid their taxes on or about September 20, 1966. For nearly fifteen years prior to these dates plaintiffs had invested sums of money in Manufacturers Credit Corporation ("MCC"), taking in return demand notes of the corporation providing for monthly interest payments at 15 percent per annum. During fiscal 1966, plaintiffs received payments from MCC totaling nearly $18,000. These payments were designated as earned interest by MCC, and there is no reason to believe that plaintiffs suspected otherwise. Accordingly, this sum was shown as earned interest income on plaintiffs' 1966 tax return, and resulted in an additional tax payment of nearly $8,000, the amount in controversy here.

MCC filed a petition for reorganization under Chapter XI of the Bankruptcy Act in August, 1967. One controversy spawned by

that petition reached this court in *Manufacturers Credit Corp. v. SEC,* 395 F.2d 833 (3d Cir. 1968). The opinion in that case, filed in May 1968, describes the history, structure and operations of MCC and its subsidiaries and affiliates in some detail, and contains the following passage:

> In reality, [the founder of MCC] employed these financing corporations as instrumentalities whereby he borrowed ever increasing huge amounts of money from the public. His scheme was to have the corporations turn over to him the proceeds from the sale of the unsecured promissory notes whereupon he paid the interest charges and other expenses. The corporations were represented as the borrowers to preclude the defense of usury. As interest accrued and principal amounts matured new notes were sold and their proceeds used to meet the earlier obligations. The result of this method of financing was an increasingly complicated debt structure with thousands of notes outstanding issued by various debtors, bearing different interest rates and maturing at different dates. The payments required by the terms of these notes in 1966 amounted to approximately $6,000,000 for interest and an equal amount for principal. As against this debt servicing charge of $12,000,000, the 1966 combined profits of all of the companies was approximately $300,000.

*Id.* at 837 (footnote omitted). That MCC, its affiliates and principals had in fact been involved in a vast "Ponzi scheme" was confirmed by an accountant's report filed in connection with the bankruptcy proceedings in June, 1968. This report concluded that MCC had never had earnings sufficient to pay interest and that the facts had been fraudulently concealed from note holders.

Plaintiffs filed a claim for tax refund in November, 1970, contending that in view of

thority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

**2.** Order of August 10, 1973, Civil No. 445–73 (D.N.J.).

**3.** Order of July 1, 1975, Civil No. 445–73 (D.N.J.).

the disclosures of MCC's operations the payments received in 1966 should be treated as a tax-free return of principal rather than as interest income. The District Director of IRS denied the claim for untimeliness.

Section 6511(a) of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 6511(a), provides

Period of limitation on filing claim— Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . .

There can be no question but that plaintiffs' claim failed to comply with the literal requirement of the statute.

■ Section 7422(a) of the Code, 26 U.S.C. § 7422(a) provides

No suit prior to filing claim for refund—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.

Since, as plaintiffs apparently recognize, § 7422(a) establishes the "undisputed proposition that failure to make a timely refund claim bars any action for such refund," *United States v. Wells Fargo Bank,* 393 F.2d 272, 273 (9th Cir. 1968); *accord, Knights of Pythias Hall Co. v. United States,* 345 F.Supp. 680 (D.Del.1972), *aff'd without opinion,* 478 F.2d 1398 (3d Cir. 1973), the district court was required to grant the motion to dismiss unless the claim

was somehow "timely," notwithstanding the language of § 6511(a).

■ Plaintiffs argued in this court that § 6511(a) is not applicable in terms to the present situation because the moneys paid constituted not "an overpayment of any tax imposed by this title," but rather a completely erroneous payment, relating to no tax imposed by the Code. That position is not well taken since *Jones v. Liberty Glass Co.,* 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142 (1947), and *Kavanagh v. Noble,* 332 U.S. 535, 68 S.Ct. 235, 92 L.Ed. 150 (1947), reject just such a narrow definition of "overpayment":

[We] read the word 'overpayment' in its usual sense, as meaning any payment in excess of that which is properly due. Such an excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law. . . Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment.

*Liberty Glass, supra,* 332 U.S. at 531, 68 S.Ct. at 233. *Accord, Southern California National Bank v. United States,* 298 F.Supp. 1249 (S.D.Cal.1969).

In refusing to dismiss the instant action, the district court took the position "that the statute of limitation was tolled until the discovery of the fraud and that a question of fact is raised as to the matter of whether the refund claim was filed within a reasonable time after discovery."[4] We cannot agree.

■ At oral argument counsel for plaintiffs conceded that he was without direct authority for the district court's result, but urged this court to extend the doctrine of "tolling" of statutes of limitation to the tax refund area. This argument initially runs afoul of the well-established principle that statutes of limitation applicable to suits against the government are conditions attached to the sovereign's consent to be sued and must be strictly construed. *Soriano v. United States,* 352 U.S. 270, 276, 77

---

4. Order of August 10, 1973, Civil No. 445-73 (D.N.J.).

S.Ct. 269, 1 L.Ed.2d 306 (1957). Unlike general statutes of limitation which govern independently existing causes of action between private parties, the timeliness requirement at issue here is not procedural, or "remedial", but jurisdictional.[5] *United States v. Sherwood,* 312 U.S. 584, 591, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Lomax v. United States,* 155 F.Supp. 354 (E.D.Pa. 1957). These principles are as applicable to tax refund suits as to any other suit against the sovereign. *Soriano, supra,* 352 U.S. at 275, 77 S.Ct. 269 (dictum); *United States v. Michel,* 282 U.S. 656, 659, 51 S.Ct. 284, 75 L.Ed. 598 (1931); *Kaltreider Construction Co. v. United States,* 303 F.2d 366 (3d Cir.), *cert. denied,* 371 U.S. 877, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962).

This special status of suits against the sovereign is fatal to taxpayers' attempt to extend the doctrine of *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874), and *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), under which a statute of limitations is tolled when the plaintiff's cause of action has been fraudulently concealed, to tax refund cases. The distinction was clearly expressed in *Public Service Co. v. General Electric Co.,* 315 F.2d 306 (9th Cir.), *cert. denied,* 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033 (1963), where the court held the statute of limitations of the Clayton Act tolled under *Holmberg, supra:*

> The reliance on *Soriano v. United States,* [supra]. is misplaced. In *Soriano* the plaintiff claimed that a statute of limitations applying to certain claims against

the government was tolled because of war. The Supreme Court refused to imply tolling by war and said ([352 U.S.] p. 276, 77 S.Ct. p. 273, 1 L.Ed.2d 306): ' . . limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.' The difference between the implication of a tolling provision in a statute limiting the time for suit against the sovereign and the application of the *Holmberg* tolling principle to a statute pertaining to a suit between private parties distinguishes the *Soriano* decision.

*Id.* at 310–11.

In our view, then, *Soriano* makes it clear that the special treatment accorded limitations on actions against the government survives the dictum in *Holmberg* that "[t]his equitable doctrine [of tolling by fraudulent concealment] is read into every federal statute of limitation." 327 U.S. at 397, 66 S.Ct. at 585.[6]

 Even if we were to conclude that there might be circumstances compelling enough to justify tolling for fraudulent concealment in a suit against the government, such circumstances are not present here. The fraudulent concealment of which these plaintiffs complain is that of a stranger to the cause of action, and can in no way be attributed to the defendant.[7] This circumstance takes the present case beyond both the established scope and the rationale of the *Holmberg* doctrine. Plaintiffs have cited no cases applying the tolling doctrine

---

5. The situation is less clear when a "statute of limitations" is included in a statute which creates a cause of action between private parties. The rationale for the distinction between suits against the government and common law actions between private parties, i. e. that in the former situation timeliness is a jurisdictional condition because it is inseparable from the cause of action, would seem to require a conclusion that limitations are "jurisdictional," and thus to be strictly construed, wherever they are established concurrently with the cause of action. Nevertheless, it has been suggested that the modern view is that equitable exceptions may be permitted even where the statute of limitations is created concurrently

with the cause of action. See *Burnett v. N.Y. Cent. R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). This question need not detain us since there is no suggestion in the leading cases that this "modern view" extends to suits against the government, which involve the additional consideration of waiver of sovereign immunity.

6. See note 5, *supra.*

7. Appellees have not suggested that the United States could be charged with fraudulent concealment or even negligence because of the SEC's failure to detect alleged violations of the federal securities laws.

where the fraudulent concealment was that of a third party.[8] Since a primary purpose of statutes of limitations is to protect defendants from the unfair surprise of state claims, *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), tolling makes sense only where such unfairness is not a consideration because the defendant's willful or negligent conduct has caused the delay. E.g. *Holmberg, supra* (fraudulent concealment); *cf. Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (negligence). That is not the case here. Furthermore, we believe that a rule by which a tax refund claimant could always escape summary dismissal for untimeliness by pleading a scenario of third-party concealment which the government could not readily evaluate or deny would be an unreasonable burden upon orderly administrative function.

Admittedly, the result we reach is a harsh one, but we are firmly convinced that it is the one required by law. "Statutes of limitation frequently involve some hardship, but the alleviation of that hardship is a matter of policy for the Congress." *Kaltreider, supra,* 303 F.2d at 368–69. In addition, we note that it does not appear that the concealment necessarily prevented the filing of a timely claim for refund. Plaintiffs aver that they had no actual knowledge of MCC's manipulations and their tax significance until 1970,[9] and we accept this as true for purposes of the motion to dismiss. However, plaintiffs have offered no adequate explanation of why they, as creditors interested in the affairs of MCC, should not, by reasonable diligence, have

discovered either the opinion of this court in *Manufacturers Credit Corp. v. SEC, supra,* or the accountant's report.[10] Either of these documents would have been sufficient at least to suggest the basis of a tax refund claim, and both were available more than a year before the deadline for the claim asserted here.

The judgment of the district court will be reversed and the case remanded to the district court with a direction to dismiss for lack of jurisdiction.

Each party will bear its own costs in this Court.

---

8. In *Bryan v. United States,* 99 F.2d 549 (10th Cir. 1938), *cert. denied,* 305 U.S. 661, 59 S.Ct. 364, 83 L.Ed. 429 (1939), the court dismissed a tax refund suit for want of a timely claim in a considerably more compelling situation. In that case the tardiness of the claim was allegedly caused, at least in part, by government auditors who discovered the overpayments but said nothing to the taxpayer. After discussing the principle that the timeliness requirement must be strictly construed, the court noted "another reason why the alleged concealment did not toll the running of the time to file claims for refund . . . ." The court then held that the auditors had acted beyond the scope of

their authority, and found no tolling because "[t]he fraudulent concealment must have been that of the party sought to be charged." *Id.* at 552.

9. The taxpayers trace their knowledge to a communication from a friend in May, 1970, and to the conviction of the founder of MCC for criminal fraud in June, 1970.

10. Plaintiffs implicitly conceded as much in their complaint, claiming only that the limitations period should be tolled until the fraud was made public on June 23, 1968.