**Mary A. RINALDI, Executrix for the Estate of Edward R. Rinaldi, et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 92–648T.**

United States Court of Federal Claims.

Nov. 24, 1993.

Order Amending Opinion Jan. 4, 1994.

R. Chad Brenner, Cleveland, OH, for plaintiffs.

Mary M. Abate, Mildred L. Seidman, Tax Div., Dept. of Justice, with whom was James A. Bruton, Acting Asst. Atty. Gen., Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

This action is brought by Mrs. Mary A. Rinaldi[1] and her son Edward R. Rinaldi, Jr. on behalf of the estate of Dr. Edward R. Rinaldi. They seek to recover estate taxes that they allege were paid wrongfully without Mrs. Rinaldi's knowledge and as part of a criminal fraud by the attorney for the estate. The complaint alleges the existence of an implied-in-fact contract to return the money. The action currently is before the court on defendant's motion to dismiss.[2] Defendant

---

1. Mrs. Rinaldi also sues in her capacity as executrix of her husband's estate and trustee of the Rinaldi Family Trust.

2. Defendant originally moved the court for an order dismissing the complaint under RCFC 12(b)(1), largely based on its belief that 28 U.S.C. § 1500 deprived this court of subject matter jurisdiction. Defendant has since withdrawn that argument. The remainder of its motion asserts that plaintiffs' motion is founded upon the revenue laws, and is thus barred by 26 U.S.C. 6511(b)(2)(A). The Court of Claims treated motions to dismiss based on section 6511(b)(2)(A) as motions to dismiss for failure to state a claim.

urges that plaintiffs' claim is founded upon the revenue laws of the United States. If defendant's contention is correct, the action is subject to all of the restrictions on such claims imposed by the Internal Revenue Code. In this instance, 26 U.S.C. § 6511(b)(2)(A) (1988), which bars recovery of taxes paid more than three years before filing a claim for refund, would preclude recovery. Plaintiffs assert that their claim is not founded upon the revenue laws, but rather on a breach of contract.

Plaintiffs' counsel has ably and tenaciously argued their claim, which arises from an extraordinarily unfortunate situation. Regrettably, this circumstance is not one that could give rise to an implied-in-fact contract. Furthermore, the court finds that plaintiffs' claim is founded upon the revenue laws, which bar recovery under this circumstance. The capability to grant plaintiffs relief is outside of the powers that Congress has granted to this court. Accordingly, the court orders that the complaint be dismissed for failure to state a claim.

## BACKGROUND

Dr. Edward R. Rinaldi prepared an estate plan that he hoped would benefit his widow and son, who was stricken with multiple sclerosis, by providing for a complete deferral of estate taxes at his death. Upon his death, Mrs. Rinaldi, as executrix of her husband's estate, hired the lawyer who had executed Dr. Rinaldi's estate plan, William Hamann, to probate the estate and to manage the Rinaldi family Trust.

Hamann betrayed his position of trust. As part of a scheme to defraud the estate, Hamann abandoned the tax structure intended by Dr. Rinaldi. Instead, Hamann administered the estate so as to unnecessarily incur taxes. He then informed Mrs. Rinaldi that the estate owed taxes, and lied about the amount actually due. At Hamann's request, Mrs. Rinaldi issued a check for $237,936.88, which he deposited in his escrow account. He paid the I.R.S. $177,936.88 and, according to plaintiffs, stole the remaining $60,000.

During a later I.R.S. audit, Hamann failed to elect to make a marital deduction for qualified terminal interest property (Q–TIP) under 26 U.S.C. 2056(b)(7)—either through incompetence, or in furtherance of his fraud. Plaintiffs contend that the estate was eligible for this deduction, and that it would have prevented accrual of any taxes. They allege that this failure caused the estate to needlessly pay an additional $836,132.83 in taxes, and $92,492.56 in interest on June 15, 1987. All told, plaintiffs allege that Hamann's fraud caused the estate to pay $1,106,562.29 in taxes and interest for the year 1985 that were not otherwise due.

In October 1990 plaintiffs discovered Hamann's fraud. On May 3, 1991 they filed an administrative claim for a refund of $1,106,-562.29. On September 18, 1991, the I.R.S. found that 26 U.S.C. 6511 barred the claim. Section 6511 requires taxpayers to file administrative claims within three years of filing, or two years of payment, whichever is later. 26 U.S.C. 6511(a). Plaintiffs then appealed, and on April 7, 1992, the I.R.S. disallowed the appeal on the same grounds.

In the single count enumerated in the complaint, plaintiffs seek repayment under an implied contract theory. A six-year statute of limitations governs such claims. 28 U.S.C. § 2501 (1988). Defendant contends that plaintiffs' claim is founded upon the revenue laws, which bar recovery in this instance,[3] see

---

See, e.g., McGregor v. United States, 650 F.2d 289, 225 Ct.Cl. 566 (1980) (order); Craiglow v. United States, 546 F.2d 431, 212 Ct.Cl. 542 (1976) (order). The court will do the same here. Because the court treats this motion as one made under 12(b)(4), it could consider materials submitted by the parties outside of the complaint only if it further converted the motion into one for summary judgment. As the court finds such treatment unnecessary, it excludes the parties' appendices.

3. The court finds it unnecessary to address defendant's alternative argument that 26 U.S.C. 7422(a) bars this action because the administrative refund claim was untimely. Under section 7422(a), a court may not take jurisdiction over a tax refund claim "unless [an administrative] claim for refund of a tax has been filed within the time limits imposed by § 6511(a)." United States v. Dalm, 494 U.S. 596, 602, 110 S.Ct. 1361, 1365, 108 L.Ed.2d 548 (1990) (citations omitted). Under section 6511(a), insofar as relevant here, the timeliness of the refund claim depends on when the return was filed. The parties dispute

26 U.S.C. 6511(b)(2)(A). According to defendant, because plaintiffs filed their claim on May 3, 1991, they may only recover money paid after May 3, 1988. Plaintiffs made their last payment on June 15, 1987. Therefore, defendant contends, plaintiffs have failed to state a claim upon which the court can grant relief.

### DISCUSSION

■ In examining plaintiffs' claim to determine whether it should grant defendant's motion, the court assumes all factual allegations to be true, and draws all reasonable inferences in favor of the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *W.R. Cooper General Contractor Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). Upon reviewing the pleadings in this light, the court concludes that it should grant defendant's motion. Plaintiffs have neither pled any of the elements of an implied-in-fact contract, nor offered anything from which the court could reasonably infer that a contract existed.

■ To demonstrate the existence of an implied-in-fact contract, plaintiffs must show mutuality of intent, unambiguous offer and acceptance, consideration, and actual or implied authority on the part of the IRS to bind the government to the alleged contract. *See El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990); *H. Landau & Co. v. United States,* 886 F.2d 322 (Fed.Cir.1989); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). Defendant correctly points out that the complaint does not allege any of these elements of a contract.

■ The paragraphs of the complaint that describe the circumstances under which the payments occurred, ¶¶ 13–23, do not describe a situation from which a contract would arise. Except for the allegations of fraud, the complaint describes a fairly ordinary payment of taxes. First, plaintiffs' former attorney filed the estate's tax return, with which he included a payment. Later, the I.R.S. audited the estate, and disallowed a deduction. As a result, the estate paid more taxes. The complaint does not allege that the I.R.S. made an offer to return the payments. It does not allege that plaintiffs accepted such a promise, or gave consideration for it. It does not contend that an official with the proper authority bound the government to return these payments. In short, plaintiffs describe no conduct or discussions surrounding these payments manifesting an intent to contract.[4] Instead, plaintiffs describe a straightforward determination that taxes were due, followed by payment.

At oral argument, the court asked plaintiffs' counsel to explain how the circumstances of this case would satisfy each of the elements of an implied-in-fact contract. Plaintiffs' counsel asserted that the "fact" that the estate paid a tax that was not due satisfies the elements of an implied-in-fact contract. Plaintiffs base their argument on *Shelter Island & Greenport Ferry Co. v. United States,* 246 F.Supp. 488 (E.D.N.Y. 1965). In that case, the corporation had mistakenly paid taxes under a repealed statute. It filed suit for the return of these taxes after the limitations period for tax claims had passed. The U.S. District Court for the Eastern District of New York found for the taxpayer under an implied contract theory. *Id.* at 494–95.

Although plaintiff cites this case as an example of an implied-in-fact contract arising from the payment of taxes, the court did not base its holding on a finding that the corporation had satisfied the elements of an implied-in-fact contract. Rather, it appears that the court premised its holding on a mistaken belief that the Tucker Act allows recovery under a quasi-contract theory where the government wrongly or mistakenly has exacted money from a plaintiff. *See*

the filing date of the return. The court need not resolve this dispute, as section 6511(b)(2)(A) would bar recovery in any event.

**4.** Plaintiffs' appendix contains their counsel's affidavit describing contacts with I.R.S. personnel regarding the estate's administrative refund claim. Even if the court were to consider the excluded attachments, the contacts set forth there would not give rise to an implied-in-fact contract.

*id.* at 494. Although the court acknowledged precedent that barred suit against the United States on implied-in-law contract grounds, *id.* at 492, it was unable to reconcile cases in which courts ordered the United States to return a plaintiff's money without finding a contractual promise to do so, *see id.* at 492–94. Ultimately, the *Shelter Island* court—like plaintiffs' counsel—characterized the line between implied-in-law and implied-in-fact contracts as "wavering." *Shelter Island,* 246 F.Supp. at 494.

■ In this court, however, the line is clear. The well-established precedent is that the "implied contract" jurisdiction of the Tucker Act extends only to cases in which a plaintiff can demonstrate facts satisfying each of the elements of a contract. *See, e.g., El Centro,* 922 F.2d at 820; *H.F. Allen Orchards,* 749 F.2d at 1575; *Fincke v. United States,* 675 F.2d 289, 230 Ct.Cl. 233 (1982); *Algonac Mfg. Co. v. United States,* 428 F.2d 1241, 192 Ct.Cl. 649 (1970). The court may not employ a legal fiction to find these elements where they do not exist—it has no jurisdiction over implied-in-law contracts. *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925). If a plaintiff seeks the return of money taken by the United States, it must found its claim on something other than an implied-in-law contract.

Under the Tucker Act, in addition to its jurisdiction over implied contract claims, this court has jurisdiction over claims against the United States founded upon either the Constitution, a federal statute, or a federal regulation. 28 U.S.C. § 1491 (1988). The Court of Claims divided this type of claim into two classes: claims founded upon a money-mandating law, and claims for the return of money that the United States improperly exacted from the plaintiff. *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 178 Ct.Cl. 599, 605 (1967).

Suits in the second class are not, at first glance, truly founded upon a federal law, but rather upon the misuse of a law. The Court of Claims held, however, that for purposes of Tucker Act jurisdiction "a claim to recover an illegal exaction made by officials of the Government, which exaction is based upon a power supposedly conferred by a statute, is a claim 'founded upon an Act of Congress.'" *Clapp v. United States,* 117 F.Supp. 576, 127 Ct.Cl. 505, 513 (1954). With regard to claims for money wrongfully exacted as taxes, the Supreme Court had held earlier that the Court of Claims had jurisdiction over them as claims founded upon the revenue laws. *United States v. Emery, Bird, Thayer Realty Co.,* 237 U.S. 28, 31–32, 35 S.Ct. 499, 500–01, 59 L.Ed. 825 (1915).

■ The *Shelter Island* court relied on three Supreme Court cases that indicate that the courts' power to hear claims against the United States for the return of improperly exacted money derives from the Tucker Act's implied contract language. *See Shelter Island,* 246 F.Supp. at 494 (citing *Dooley v. United States,* 182 U.S. 222, 224–30, 21 S.Ct. 762, 763–65, 45 L.Ed. 1074 (1901); *United States v. State Nat. Bank,* 96 U.S. 30, 35–36, 24 L.Ed. 647 (1877); *Knote v. United States,* 95 U.S. 149, 156–57, 24 L.Ed. 442 (1877)). The Court decided these cases, however, before *Emery, Bird.* As Justice Holmes noted, the result in that case was first gradually approached by others. *See Emery, Bird,* 237 U.S. at 32, 35 S.Ct. at 499. The cases cited by the *Shelter Island* court represent partial steps toward the holding in *Emery, Bird.* The court believes that *Emery, Bird* presents a final and more satisfactory explanation of the courts' jurisdiction over claims for the return of money, as it sets meaningful parameters for a claimant's suit. Such claims should be characterized as claims founded upon the laws of the United States. As such, they are subject to any restrictions contained in those laws, such as shorter limitations periods.

■ The court finds that regardless of whether defendant rightly or wrongly exacted plaintiffs' money, it exacted the money under the revenue laws. Plaintiffs paid the money at issue here because they believed that the revenue laws required them to do so, and the I.R.S. accepted the money because it believed that the revenue laws empowered it to do so. Plaintiffs now contend that this payment was a misuse of the revenue laws. Just as other claims against the government

for the return of money are founded upon the laws allegedly misused to obtain the money, this claim is founded upon the revenue laws.[5]

Section 6511(b)(2)(A) of the Internal Revenue Code sets a limit on the amount that the I.R.S. may return to a taxpayer. This section states, in relevant part: "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to three years plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A).

■ This section bars plaintiffs from recovery. Plaintiffs filed their administrative claim for refund on May 3, 1991. Therefore, they may recover an amount equal to the tax paid between May 3, 1988 and May 3, 1991. Plaintiffs did not pay taxes during this time. The last payment relevant to this suit was made on June 15, 1987. Thus, plaintiffs are unable to state a claim upon which this court can grant relief.

■ The court notes that plaintiffs contend that the return filed in 1986 was invalid because Mrs. Rinaldi's signature was "forged." They assert that the only valid return was filed on May 3, 1991, which was also the date of the administrative claim for a refund. Regardless of the validity of this line of argument, section 6511(b)(2)(A) acts as an absolute bar to recovery. Fraud on the part of a stranger to a cause of action can not equitably toll the running of a limitations period. *Kreiger v. United States,* 539 F.2d 317, 321–22 (3d Cir.1976); *see Ambrose v. United States,* 4 Cl.Ct. 352 (1984), *aff'd without op.* 738 F.2d 453 (Fed.Cir.1984) (declining to toll the running of the two-year period for filing a tax refund suit where plaintiff claimed his wife had forged his signature on a joint tax return). Limitations periods exist to prevent prejudice to a defendant from a

stale claim. *Kreiger,* 539 F.2d at 322. Nevertheless, courts will toll them where no prejudice exists because the defendant is at fault for the plaintiff's delay in bringing the action. *Id.* These circumstances are not present here.[6]

### CONCLUSION

Plaintiffs have not alleged circumstances from which an implied-in-fact contract could arise. Rather, their claim is founded upon the revenue laws. Recovery is therefore limited to zero by 26 U.S.C. § 6511(b)(2)(A). The court directs the Clerk to dismiss the complaint. No costs.

### ORDER

In its Request for Clarification of December 8, 1993, defendant seeks clarification of the opinion of November 24, 1993 dismissing the complaint for failure to state a claim. Defendant moves the court to clarify two points. In its order of December 9, 1993, the court chose to treat the motion as one for reconsideration, and provided plaintiffs with the opportunity to respond. Plaintiff opposes clarification as unnecessary.

Defendant's first concern is that one might mistake the recitation of facts in the opinion's background section as findings of fact. Plainly they could not be. As the opinion recites, a motion to dismiss for failure to state a claim must presume, solely for purposes of ruling on the motion, that plaintiffs could prove what they allege in the complaint. Opinion at 166–67. The court must accept those allegations as true, along with reasonable inferences therefrom. *Bane v. Ferguson,* 890 F.2d 11 (7th Cir.1989). This court does not make findings when ruling on a motion made under RCFC 12(b)(4). The opinion makes clear that the court is testing the allegations in the pleadings against the

---

5. *See generally West Publishing Co. v. United States,* 198 Ct.Cl. 668, 1972 WL 20800 (1972) (rejecting plaintiff's attempt to characterize its tax refund claim as a claim for recision of a contract based on mutual mistake of fact, and counseling fidelity to the mechanisms of the revenue laws unless Congress has expressly allowed a departure); *see also* Plaintiffs' Amended Complaint, ¶ 6 (stating that "[t]his is a suit arising under Section 7422 of the Internal Revenue Code

and the laws of the Internal Revenue Code for the refund of estate taxes").

6. Even if they were, doubt exists as to whether a court could equitably toll the operation of section 6511(b)(2)(A). The First Circuit has held that the courts can not do so. *Oropallo v. United States,* 994 F.2d 25, 31 (1st Cir.1993).

170

applicable law. The court denies defendant's motion with regard to this point.

Defendant also contends that the opinion does not clearly state that the court found that it did not need to address defendant's timeliness argument. Defendant's concern is that by basing its ruling on § 6511(b)(2)(A), the court by implication found the return to be timely under section 6511(a) and 7422(a). The court made no finding that plaintiffs timely filed the return. Instead, the court held that regardless of the validity of plaintiffs' timeliness argument, section 6511(b)(2)(A) completely barred recovery. Nevertheless, the court agrees that some clarification of its holding may be helpful. Such clarification does not, however, change the substance of the decision.

The court amends the opinion of November 24, 1993. Add the following at page 166, paragraph 4, sentence 3:

[Editors Note: Amendment adding footnote 3 incorporated.]

Renumber the later footnotes accordingly. It is so ordered.