Davis, Judge,
delivered the opinion of the court:
The plaintiff-taxpayer is an unincorporated association, formed in 1913 as a mutual savings bank for West Publishing Company employees. It lost its tax-exempt status in 1952 with the repeal of § 101(2) of the 1939 Internal Revenue Code (which exempted non-stock mutual savings banks), but nevertheless continued from 1953 to 1965 to file returns as a tax-exempt organization under a good-faith mistake that it still retained the immunity. On audit, the Internal Revenue Service discovered the error and proposed deficiencies for various years totalling $82,139 in income tax and $566,017 of accumulated earnings tax. The taxpayer protested both sets of deficiencies, but compromised with the Appellate Division of the Service on July 29,1966, and signed a Form 870-AD, requiring it to pay only the corporate income tax plus $27,526 assessed interest.
On January 28, 1971 — four and one-half years after payment, and without making a claim for refund — plaintiff filed this suit seeking rescission of its Form 870-AD and *671 recovery in full of the $109,665 paid under that agreement. The basis for the claim is an alleged mutual mistake of fact arising out of an incorrect mathematical calculation; if this error is corrected, plaintiff says, it will owe no income taxes at all for the years involved.[1]
Defendant has moved to dismiss, maintaining that the court lacks jurisdiction because of plaintiff’s failure to file a timely claim for refund under § 7422(a) of the Internal Eevenue Code of 1954 and § 3772 of the Internal Revenue Code of 1939; [2] the Government says, in addition, that it is far too late to remedy this defect since a refund claim must be filed under § 6511(a) of the 1954 Code[3] within three years of the return or two years from payment of the tax, whichever is later.
Plaintiff’s response is to insist that its claim does not fall under 26 U.S.C. §§ 6511 and 7422, but that it is merely seeking to rescind an agreement with the Government and can *672 avail itself of the ordinary six-year limitations period generally applicable to such contractually-founded claims.[4]
The agreement taxpayer signed, Form 870-AD, is used by the Appellate Division of the Internal Revenue Service in place of the statutory closing agreement.[5] The document is, on its face, an offer by the taxpayer to waive the statutory restrictions on assessments and collection and to consent to the assessment and collection of the stated deficiencies. Once accepted by the Service, no further deficiencies will be assessed (absent fraud, malfeasance, mathematical error and certain other equitable exceptions) and interest will no longer run. In exchange, the taxpayer agrees not to file a claim for refund for the taxable period to which the form relates. The text embodying these mutual agreements reads as follows:
If this proposal is accepted by or on behalf of the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, or an excessive tentative allowance of a net operating loss carryback; and no claim for refund or credit shall be filed or prosecuted for the year(s) above stated other than for the amounts of over assessment shown above and the amounts attributed to a claimed deduction for a net operating loss carryback or an investment credit carryback as provided by law.
The form 'also provides: “The execution and filing of this offer will expedite the adjustment of your tax liability. It is not, however, a final closing agreement under Section 7121 of the Internal Revenue Code of 1954, nor does it extend the statutory period of limitations for refund, assessment, or collection of the tax.”
*673 I.
At bottom this is indisputably an action to recover taxes paid on its own behalf by West Publishing Company Employees’ Preferred Stock Association in which the basic ground for recovery is that the taxes were not owed. The general rule for demands for return of taxes improperly paid is, of course, that a refund claim must be filed with the Internal Eevenue Service and suit must be initiated within the special shortened limitations period Congress has established for tax refund claims (26 U.S.C. § 6532). As we recently said in Alexander Proudfoot Co. v. United States, 197 Ct. Cl. 219, 226-27, 454 F. 2d 1379, 1383 (1972) :
The twin devices of the refund claim and the shortened limitations period are intrenched in federal tax law, are very well known to informed taxpayers, and serve purposes Congress deems important. “The filing of a claim or demand as a prerequisite to a suit to recover taxes paid is a familiar provision of the revenue laws, compliance with which may be insisted upon by the defendant * * *. One object of such requirements is to advise the appropriate officials of the demands or claims intended to be asserted, so as to insure an orderly administration of the revenue * * *. The necessity for filing a claim such as the statute requires is not dispensed with because the claim may be rejected. It is the rejection which makes the suit necessary. An anticipated rejection of the claim, which the statute contemplates, is not a ground for suspending its operation.” United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 272-73 (1931). We have said, similarly, that the requirement of an adequate refund claim (Union Pacific R.R. v. United States, 182 Ct. Cl. 103, 109, 389 F. 2d 437, 442 (1968)):
is designed both to prevent surprise and to give adequate notice to the Service of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination. United States v. Memphis Cotton Oil Co., 288 U.S. 62 (1933). In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend.
*674 See, also, Commercial Solvents Corp. v. United States, 192 Ct. Cl. 339, 348, 427 F. 2d 749, 754, cert. denied, 400 U.S. 943 (1970). In like fashion, the shorter limitation statute for tax refund suits has been said by the Supreme Court to reflect congressional recognition “that suits against the United States for the recovery of taxes impeded effective administration of the revenue laws * * United States v. A. S. Kreider Co., 313 U.S. 443, 447 (1941).[6]
The close adherence by the courts to the special time limits prescribed for filing refund claims and bringing tax refund suits can be illustrated, not only by Alexander Proudfoot Co., supra, but by a number of earlier decisions. Where a retroactive relief statute did not expressly reopen closed years, an untimely claim was held to bar refund. United States v. Zacks, 375 U.S. 59 (1963). Even though a Service letter conceded the merit of the taxpayer’s claim in Long v. United States, 130 Ct. Cl. 806, 127 F. Supp. 623 (1955), limitations foreclosed a refund. See, also, United States v. A. S. Kreider Co., supra, 313 U.S. 443, n. 6. Courts have likewise refused to permit late filing although the Commissioner had collected the tax without giving the required deficiency notice (Gross v. United States, 130 F. Supp. 441 (D.C. Mass, 1955)), and although the deficiency had been assessed after the statutory period (The Baltimore County Bank v. United States, 86 Ct. Cl. 539, 22 F. Supp. 435 (1938)). In Wisconsin National Life Ins. Co. v. United States, 70 Ct. Cl. 433, 438, 42 F. 2d 316, 318 (1930), we explained why limitations barred suit even though the taxing statute had been held unconstitutional after the tax was collected:
The statute of limitation on the right to a refund or to recover an amount assessed and collected as a tax cannot be made to depend upon the question of whether there was any legal authority for the assessment and collection. If the plaintiff were correct in its contention in this case the statute of limitation would be practically of no force *675 or effect. Tbe statute of limitation is jurisdictional in this court, and when it appears, as here, that the time within Which a person may bring a suit against the United States has expired, or that plaintiff has not complied with the requirements necessary to give him a right to maintain a suit, this court is without jurisdiction to entertain it.
See Maguire and Zimet, Hobson's Choice and Similar Practices in Federal Taxation, 48 Harv. L. Rev. 1281, 1830-31 (1935).[7]
This long line of decisions, as well as the whole history of the mechanism of refund-claim-plus-shorter-limitations for tax refunds, manifests a potent policy in favor of fidelity to this particular tax pattern where Congress has not made an express departure.
II.
Some rare non-statutory exceptions to the general rule do exist, however, and our precise problem is whether taxpayer fits or should be put into that narrow class.
The major qualification of the normal refund prerequisites is the so-called suit on an “account stated”, which does not require a refund claim and can be brought within the over-all six-year limitations span.[8] To constitute such an account the Government must have agreed with the taxpayer that he has overpaid his taxes in a definite amount, and must have communicated to him its intention to repay. The action is based on the common law concept that an implied contract arises when a debtor (the Service) submits to a creditor (the taxpayer) a statement of the final balance due on an account and ■the creditor agrees to accept the proposed balance to close the account. See Garbis and Frome, supra, n. 5, at 12.22-25. *676 The Government has already bad the chance to pass on the plaintiff’s claim and has made a definite decision in his favor; this previous opportunity for the Service to correct its error-— an opportunity which it has used — makes a refund claim meaningless, and accordingly the courts have dispensed with it.
But the components of an account stated are plainly not present in this case. The Government has never agreed that it owes plaintiff the sum for which suit is brought, or any sum at all. If plaintiff is right that the Form 870-AD agreement incorporated a mathematical error,[9] the most that the agreement provides is that plaintiff may ask for a reopening of its tax liability for the covered years. The Government has not said or intimated, either in the Form 870-AD or otherwise, that on reopening it would mechanically concede the recovery now sought; it might, for instance, find other grounds for offsetting the mathematical error (as it would have a right to do), including, perhaps, some of the accumulated earnings tax which it gave up when it acceded to the Form 870-AD agreement. There has been, in a word, no acknowledgment at all by the Service that it owes plaintiff the amount sued for (or any part of it).
"We are warranted in looking closely to see whether the Service has definitively and finally agreed to refund the precise amount claimed. The Supreme Court has been very strict in insisting'that, before the concept of an account stated can be used, it be shown beyond peradventure that the Government has in fact agreed with, and communicated to, the taxpayer its intention to pay a stated sum. See Daube v. United States, 289 U.S. 367, 372 (1933) (no account stated where schedule of refunds and credits was signed by the Commissioner and sent to the Collector with a check for taxpayer, but no notice or delivery was made to the latter); B. H. Stearns Co. v. United States, 291 U.S. 54, 64-67 (1934) (no account stated in certificate of overassessment sent to tax *677 payer with understanding that it was to be set off against the tax for an earlier year); United States v. A. S. Kreider Co., supra, 313 U.S. 443, 448-49 (1941) (no account stated in certificate of overassessment saying that a sum had in fact been overpaid but refund was time-barred).
In the same vein the Supreme Court has also admonished against expanding the concept of account stated beyond the narrow confines that Court has framed for it. The Daube opinion says (289 U.S. at 372-73):
High public interests make it necessary that there be stability and certainty in the revenues of Government. These ends are not susceptible of attainment if periods of limitation may be disregarded or extended. By the ruling in the Bonwit Teller case a specific limitation applicable to claims for the recovery of taxes is set aside and superseded whenever the statement of an account sustains the inference of an agreement that the tax shall be repaid. As soon as this appears, a fresh term of limitation is born and set in motion. It is a ruling not to be extended through an enlargement of the concept of an account stated by latitudinarian construction.
The other recognized exception to the refund-claim requirements of §§ 7422 and 6511 is a suit in implied contract to recover a sum not collected as the plaintiff’s own taxes but applied to the tax debts of others. Kirkendall v. United States, 90 Ct. Cl. 606, 31 F. Supp. 766 (1940); Ralston Steel Corp. v. United States, 169 Ct. Cl. 119, 340 F. 2d 663 (1965), cert. denied, 381 U.S. 950 (1965). Obviously, this type of action is altogether different from what we have here. In Kirhendall, for example, where money belonging to plaintiff was wrongfully confiscated by the Government and applied as a credit against a tax assessment alleged to be due by a third party, it was held that a claim for refund by the plaintiffs (the rightful owners) was not an appropriate step since defendant did not say that the plaintiffs had paid (or had assessed against them) any taxes.
III.
Taxpayer urges us, in effect, to make a new judicial exception for this case, but we find insufficient justification for such an additional deviation.
*678 Stress is laid on the declaration in the Form 870-AD that “no claim for refund or credit shall be filed or prosecuted * * *” as excusing (even forbidding) the filing of any refund claim. In context, however, this statement must refer to a claim not based on fraud, mathematical mistake (as here), and the other circumstances listed as authorizing reopening.[10] Elsewhere the form warns that it does not “extend the statutory period of limitation for refund * * * of the tax” (emphasis added), thus indicating that there can be, in some situations, a refund claim for the very tax involved in the agreement. Those situations would naturally encompass the equitable grounds for reopening specified in the agreement itself — including “an important mistake in mathematical calculation”, which plaintiff invokes. Thus, the filing of a refund claim was not forbidden by the agreement in this type of case.[11]
In addition to relying on the terms of Form 870-AD, plaintiff seems to argue that the double requirements of a refund claim plus suit within the reduced tax-limitations period may both be dispensed with where the action seeks rescission of a settlement agreement or contract with the Service.[12] The argument is that such an agreement, like any other government contract, may be set aside, in appropriate cases, for mutual mistake (see Morgan v. United States, 80 Ct. Cl. 81, 93-94, 8 F. Supp. 746, 751 (1934)) [13] and like other federal agreements should be controlled by the six-year statute alone.
The first part of this argument need not be questioned. We *679 can assume that a Form 870-AD agreement may be reopened, at least in those situations it spells out for reopening.[14] But it does not follow that a refund claim may be omitted.
In Morgan, supra, and in 'all the other cases in which taxpayers have successfully sought to set aside similar settlements on the ground of mistake, the refund-claim route was followed. See Big Diamond Mills Co. v. United States, 51 F. 2d 721 (C.A. 8, 1931); Colorado Milling & Elevator Co. v. Howbert, 57 F. 2d 769 (C.A. 10, 1932); Staten Island Hygeia Ice & Cold Storage v. United States, 85 F. 2d 68 (C.A. 2, 1936); United States v. Pittman, 48-2 USTC 663. These cases may support the proposition that a mistake in fact will result in rescission (see also Beg. 301.7122-1 (c)), but they in no way buttress plaintiff’s more vulnerable and vital point that a taxpayer can come directly into court without first filing a timely refund claim. On the contrary, the decisions show that previous taxpayers seeking rescission have adhered to the normal tax practice. See, also, Backus v. United States, 75 Ct. Cl. 69, 59 F. 2d 242 (1932), cert. denied, 288 U.S. 610 (1933); Guggenheim v. United States, 111 Ct. Cl. 165, 77 F. Supp. 186 (1948), cert. denied, 335 U.S. 908 (1949); and Hamilton v. United States, 163 Ct. Cl. 116, 324 F. 2d 960 (1963) — other cases in this court, seeking to overturn compromise agreements, in which refund claims were filed.
We see no adequate basis for a court to authorize a by-pass of this requirement (as well as of its twin, truncated limitations) simply because rescission is sought. The prime considerations all run the other way. As we have pointed out, the terms of Form 870-AD do not compel or even sanction *680 plaintiff’s course, and tbe exceptions to the refund-claim precondition-to-suit are very few and limited in scope. We have noted the Supreme Court’s counsel against disregarding or extending tax limitations periods, and its words disfavoring “latitudinarian construction” of the account stated concept which has that effect. Daube v. United States, supra.
In addition- — as in Alexander Proudfoot Co. v. United States, supra, but unlike the account-stated situation — the objectives of the special tax claim-and-suit requirements are affirmatively furthered by applying them here. The Service should be told that it made a mathematical error so that it can correct it without litigation, or seek to show taxpayer that there was no such mistake. The taxpayer can, of course, just as easily file a refund claim where he seeks rescission of a compromise agreement as where he asks for an ordinary refund in the absence of an agreement. Plaintiff says that it did not discover the mistake until it was too late to file a claim, but this is a very common occurrence (perhaps the most frequent reason for delay in asking for refunds) which does not single out this taxpayer from thousands of others, or give it greater “equity”.
There is, too, the unfairness to the Government of accepting plaintiff’s invitation. In making the agreement, the Service in effect gave up its large claim for the accumulated earnings tax. If the agreement is now set aside at plaintiff’s behest, the parties will not be put in statu quo ante since it is apparently now too late for the Service to assess the accumulated earnings tax against taxpayer. 26 U.S.C. § 6501. The plaintiff, if it is correct with respect to the claimed error in the income tax, would recover -back all it paid (plus interest), but it would not be subject to the possibility of having to pay the full accumulated earnings tax which the Government foreswore.[15] If a timely refund claim had been filed, the Service would in all probability have been better situated to protect the revenue.
Finally there are no decisions supporting or suggesting *681 plaintiff’s position. The only one at all close is Shelter Island & Greenport Ferry Co. v. United States, 246 F. Supp. 488 (E.D.N.Y. 1965), where, without filing a timely refund claim, a taxpayer recovered money paid to the Internal Revenue Service under the mistaken belief that the repealed excise tax on the transportation of freight was still in effect. But that opinion carefully distinguished the present class of case in which recovery is sought of a non-repealed tax. 246 F. Supp. at 491-92, 494, 495.
For these reasons, defendant’s motion to dismiss is granted and the petition is dismissed as barred by 26 U.S.C. §§ 7422 and 6511 (and, where applicable, the comparable sections of the 1939 Code).

 Taxpayer says that the Service, in computing the tax liability, mistakenly calculated the amount of its dividend-received deduction. The brief puts it this way: “Sections 243(a) (1) and 246(b) (1) of the 1954 Internal Revenue Code limit the dividend received deduction to 85% of the taxpayer’s taxable income calculated before certain other allowed deductions; however, Section 246(b) (2) of the 1954 Internal Revenue Code provides that in making the calculation such a limitation does not apply for any taxable year in which there is a net operating loss (Section 26 (b) and (c) of the 1939 Internal Revenue Code provides for the same calculation). Therefore, since Petitioner, after the deduction for dividends received, had a net operating loss for each of the years in question, a correct computation of Petitioner’s tax liability as a corporation for each of the said fiscal years would have resulted in no tax liability for the Petitioner.”

 Internal Revenue Code of 1954, 26 U.S.C. § 7422, Civil Actions for Refund:
"(a) No Suit Prior to Filing Claim for Refund — No suit or proceeding shall be maintained in any court for the recovery of any, internal revenue tax alleged to have been erroneously or illegally assessed or collected * * * or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed * *
“Internal Revenue Code of 1939, 26 U.S.C. § 3772, Suits for Refund: “(a) Limitations — (1) Claim. — No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected * * * or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed * *

 Sec. 6511: “Limitations on Credit or Refund.
“(a) Period of Limitation on Filing Claim. — Claim for credit or refund of an overpayment of any tax imposed by this title * * * shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later « * »
“(b) Limitation Allowance of Credits and Refunds — (1) Piling of claim within prescribed period. — No credit or refund shall be allowed or made after *672 the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for eredit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.”

 28 U.S.C. § § 2401 (a), 2501.

 On Form 870 — AD generally, see Garbls and Frome, Procedures in, Federal Tax Controversies, 1.24-1.27 and 12.10-12.12 (1968) ; Federal Tax Procedure Sor General Practitioners, California Continuing Education of the Bar, ed. Slater and Walker (1968) ; Freeman and Freeman, The Tax Practice Deshhooh, 111-4 (1960) ; compare Griswold, “Finality of Administrative Settlements in Tax Cases”, 57 Harv. L. Rev. 912 (1944), on the impracticality of formal closing agreements.

 Since United States v. A. S. Kreider Co., 313 U.S. 443, 447-48 (1941), there has been no question but that the general six-year statute was intended only as an outside limit on the period within which all suits against the United States might be begun, and that “Congress left it open to provide less liberally for particular actions which, because of special considerations, required different treatment.”

 In certain Instances where Congress has considered the ordinary tax limitation statute to create serious Inequities It has made a legislative exception. In the case of bad debt reserves, for example, § 6511(d) was passed In 1942 to extend the three-year period to seven years expressly In order to eliminate a situation characterized as “inequitable”, under the shorter period of limitations, a taxpayer who incorrectly estimated when a debt became worthless was likely to be time-barred (H.R. Rep. No. 2333, 77th Cong. 2d Sess. 44-5 (1942-2 Cum. Bull. 372, 408)). See Smith Electric Co. v. United, States, ante, at 644, 461 P. 2d 790.

 Bonwit Teller & Co. v. United States, 283 U.S. 258 (1931), second hearing 72 Ct. Cl. 559, 52 P. 2d 904 (1931) cert. denied, 285 U.S. 538; Otis Elevator Co. v. United States, 92 Ct. Cl. 590; 36 F. Supp. 328 (1941).

 The defendant concedes, for the purposes of the motion to dismiss, the allegation that there was a mathematical error In the computation of taxpayer’s Income tax liability, though It reserves the right to argue, if its motion Is denied, that the error was not mathematical but a failure to apply the correct statutory provisions.

 See the text of the form as set forth Immediately preceding Part I, supra.

 At least one comment paraphrases Form 870-AD as providing: “If the offer Is accepted by the Internal Revenue Service, ‘the ease shall not be reopened nor shall any claim for refund be filed or prosecuted In the absence of fraud.’ ” Garbls and Eróme, supra, at 1.27. That reading comports with the Government’s Interpretation with which we agree.

 Taxpayer does not seriously press for reformation since there Is no basis for knowing what agreement the parties would have made had they known the correct facts.

 “# • * [A] compromise settlement of a case based upon an assumed liability that does not in fact or in law exist, and which Is entered into under a mutual mistake, is not binding and does not bar the refund or recovery of the overpayment made in a case in connection with which the compromise was offered and accepted, unconscious ignorance by both parties of a fact material to the contract or belief in the present existence of a thing material to the contract constitutes a mutual mistake of fact.”

 For discussion of the many varying decisions on the finality of Form 870-AD when the taxpayer attacks previously-agreed-to assessments without alleging fraud or mathematical mistake, see Brannlan, “Finality of Informal Tax Settlements, Estoppel as a Bar to Kefund”, 21 S.W.L.J. 350 (1967) ; Ohl, “Implications of Form 870 and Related Tax Settlements,” 11 U. Pitt. L. Rev. 173 (1950) ; Evans, “Filing Application for Federal Tax Refund After Signing Form 870-AD, Promising Not to File", 24 Mo. L. Rev. 337 (1959) ; “Taxpayer Wins on 870 Issue: Morris White Fashions Case Limits IRS”, 12 Journ. of Tax. 294 (1960) ; “Effects of Executing Forms 870 and 870-AD: Taxpayer’s Rights and Liabilities”, 22 Jour, of Tax. 249 (1965) ; “CA-10 Holds that 870-AD is No Bar to Refund Claim”, 24 Jour, of Tax. 311 (1966) ; “How Binding are Stipulations with the Commissioner”, 27 N.Y.U. Institute on Federal Taxation 1378 — 80 (1969) ; Goodrich, Redman, and Quiggle, Procedure Before the Internal Revenue Service, 133-9 (1966).

 Possibly the defendant might offset the accumulated earnings tax, If it properly applies, but the amount of the proposed deficiency for that tax (oyer $566,000) was very much greater than the principal of the income tax paid by taxpayer under the Porm 870-AD agreement ($82,139).