Stuart and Beverly BAUMGARD, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 95–169 T.

United States Court of Federal Claims.

Nov. 13, 1998.

John A. Strain, Strain & Rosenberger, Long Beach, California, for plaintiffs.

Ellen C. Specker, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

HODGES, Judge.

This case is before the court on cross motions for summary judgment. Plaintiffs claim entitlement to $95,290.02 for an overpayment of tax. The alleged overpayment arose from a 1986 net operating loss that plaintiffs used as a deduction for the 1983 and 1984 tax years.[1] Plaintiffs present this claim not as a tax refund suit but as a contract claim. Defendant contends that when the IRS disallowed the loss for 1986, the auditing agent failed to disallow the 1984 carryback amount which arose from the loss. Thus, plaintiffs' account erroneously showed a credit balance. Once the mistake was discovered, the IRS transferred the credit to its general fund and informed plaintiffs that they were not entitled to a refund. Because plaintiff cannot show the existence of a contract with the United States, we grant defendant's motion for summary judgment.

## BACKGROUND

Plaintiffs reported a net operating loss of $896,466 for the 1986 taxable year. The loss was related to car racing. Of that, $815,000 was described as a "loss from investment in [a] related business." Plaintiffs amended their 1983 and 1984 returns in 1988 to carryback the $815,000 loss to those tax years, resulting in an overpayment of taxes for those years. Plaintiffs determined they overpaid $97,421 in taxes in 1983 and $72,484 in 1984. The IRS refunded $104,281.70 to plaintiffs in June 1988 for the 1983 taxable year.[2] Plaintiffs amended their 1986 return

---

1. This deduction is referred to as a carryback. I.R.C. § 172(b)(1)(A) permits a taxpayer to carry- back a net operating loss to each of the three years preceding the taxable year of such loss.

2. This represents tax of $97,421 and interest of

in July 1988, before receiving word about the 1984 tax year. They eliminated the $815,000 deduction and claimed instead a casualty/theft loss of $770,441.

The IRS scheduled abatements of tax and interest for taxable year 1984 totaling $95,-290.02 in October 1988.[3] The notice entitled "Statement of Change to Your Account" stated in part:

Amount to be refunded to you if you owe no other obligations [is] $95,290.02[.] You may have already received this check. If not, please allow 2 weeks for it to be mailed to you. Any interest due you will be added to your refund.

The IRS agent who conducted the audit of the 1986 tax year informed plaintiffs that he was considering disallowing the 1986 loss of $815,000 (subsequently recharacterized as a casualty/theft loss) on the grounds that plaintiffs had a reasonable prospect of recovery and failed to substantiate the loss was due to theft. The IRS did not refund the amount because of a hold placed on the account pending an examination of Knox Energy Partners No. 1.[4]

Plaintiff was informed in February 1990 that the IRS was disallowing the 1986 casualty/theft loss on the amended return filed in 1988. In October 1991 plaintiffs requested a transcript of the 1984 taxable year, which reflected a credit balance of $95,290.02. Plaintiffs inquired as to the status of the 1984 credit balance. In January 1992, a tax technician from the IRS stated that the credits would remain on the account until the resolution of Knox Energy Partners No. 1.

The Knox Energy audit was settled in July 1992. The IRS computed the effect of the settlement on the 1984 taxable year in December 1992. The 1984 year was unchanged. Soon thereafter, the 1984 carryback amount, stemming from the 1986 return was disallowed. The IRS transferred the $95,290.02 credit to its general fund. Plaintiffs received a letter from the IRS in March 1993 explaining the reasons for the disallowance. It stated in part:

As you are probably aware, when the audit of 1986 was done, the agent failed to follow through on the audit and eliminate the carrybacks to 1983 and 1984.

[T]he credit from the 1984 1040X allowing the NOL carryback from 1986[was] never refunded. Because this amount was not allowable and because by mistake it didn't refund, we will not refund it. The taxpayer is not entitled to it, and had it been done properly, the taxpayer would owe interest on it. Of course because we are barred from assessing it, we can't assess interest on it.

All questions regarding credits were referred to the IRS's Problems Resolution Officer. Plaintiffs demanded payment for the 1984 credit from the Problems Resolution Office in March 1994. The IRS responded by stating that claims for a refund for 1985, 1986, and 1987 were closed and plaintiffs would not be receiving an official notice of disallowance because they had executed Form 2297.[5] Plaintiffs filed suit in March 1995.

## DISCUSSION

Plaintiffs contend that the United States must pay them the amount that it determined to be an overpayment for 1984. The 1984 credit balance of $95,290.02 constituted an "account stated" at the time that it was scheduled and therefore must be refunded, according to plaintiffs.

■ Account stated recovery is premised on implied contract theory. It permits recovery "when a debtor (the Service) submits to a creditor (the taxpayer) a statement of the final balance due on an account and the creditor agrees to accept the proposed balance to close the account." *West Publishing Co. Employees' Preferred Stock Assn. v. United States,* 198 Ct.Cl. 668, 675, 1972 WL 20800 (1972). A contract is created when the

---

$6,860.70.

**3.** This represents tax of $72,484 and interest of $22,806.02.

**4.** Knox Energy Partners No. 1 is one of plaintiffs' investments of which the IRS was conducting an audit.

**5.** Form 2297 authorizes a waiver of statutory notification of claim disallowance.

Government "agree[s] with the taxpayer that he has overpaid his taxes in a definite amount, and ... communicated to him its intention to repay." *Id.*

Plaintiffs assert that the United States agreed that they had overpaid their taxes for 1984. The recording of a credit in a specific dollar amount, and their receipt of an October 1988 "Statement of Change to your Account" created an implied-in-fact contract with the United States. The October letter stated that the amount to be refunded to plaintiffs if they owed no other obligations was $95,290.02. The transcript plaintiffs received listed $72,484 as abatement of prior tax and $22,806.02 as abatement of interest assessed.

The IRS subsequently discovered during an audit of the 1984 year that upon disallowance of the 1986 loss claimed by plaintiffs, it had failed to go back and disallow the associated loss carryback for the 1983 and 1984 years. It had already remitted payment for the 1983 year to plaintiffs. The $95,290.02 credit attributable to the 1984 tax year had not been refunded to plaintiffs when the IRS discovered its mistake. Thereafter, it was placed in the IRS General Fund and kept in satisfaction of taxes owed by plaintiffs.

■ The "Statement of Change to Your Account" sent to plaintiffs in October 1988 was an IRS form letter that provided the amount to be refunded "if you owe no other obligations." An account stated arises only after the IRS "[has] the chance to pass on the [taxpayer's] claim and has made a definite decision in its favor." *West Publishing Co. Employees' Preferred Stock Assn.,* 198 Ct.Cl. at 676. The qualifying language in the letter shows that the amount was not a determined sum. The IRS had not made a definite decision in plaintiffs' favor. Plaintiffs were aware that the credit would be held pending resolution of Knox Energy Partners No. 1.[6] They also knew that the IRS agent conducting the audit of 1986 was considering disallowance of the 1986 loss. The final sum of the refund, if any, was uncertain. Where the statement of account is "provisional and tentative" there was no

agreement as to the credits. *R.H. Stearns Co. v. United States,* 291 U.S. 54, 66, 54 S.Ct. 325, 78 L.Ed. 647 (1934).

■ Under an implied-in-fact contract theory, plaintiffs must show mutuality of intent to contract, consideration, and lack of ambiguity in offer and acceptance. *City of Cincinnati v. United States,* 153 F.3d 1375 (Fed. Cir.1998). They must show authority to contract on the part of the Government agent with whom they dealt. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

Plaintiffs do not claim that they overpaid their taxes. They stipulate that when the 1986 loss was disallowed, the related carryback for the 1984 year was not adjusted to recognize the disallowance. A contract cannot be created when the entire basis for it, that being an overpayment by plaintiff, never occurred. The transaction lacks consideration. The parties did not bargain.

■ Plaintiffs did not accept the alleged offer. They received a notice from the IRS informing them of a change to their account, and they were aware that adjustments to the account could be made. Plaintiff must show that "a balance was struck in such circumstances as to import a promise of payment on the one side and acceptance on the other." *United States v. A.S. Kreider Co.,* 313 U.S. 443, 448, 61 S.Ct. 1007, 85 L.Ed. 1447 (1941) (citing *R.H. Stearns Co.* 291 U.S. at 65, 54 S.Ct. 325.) Plaintiffs cannot show that they changed position in reliance on the letter. As the court in *Brooks–Scanlon Corporation* stated:

A statement of an overassessment appearing in a taxpayer's account certified by the Commissioner does not constitute a promise to pay the amount thereof unless the account as a whole shows that the overassessment is due and owing to the taxpayer and that he and the representative of the Government have agreed upon the debts and credits as set out therein, in which event the certificate becomes an account stated.

---

6. While the decision not to refund the credit from 1984 was not due to the Knox Energy audit,

the fact that refund was uncertain defeats an implied-in-fact contract.

*Brooks–Scanlon Corp. v. United States,* 90 Ct.Cl. 353, 31 F.Supp. 151, 153 (1940). Plaintiffs have not made such a showing. The Government did not promise that the money would be refunded and plaintiff did not accept defendant's "offer" in any event. A refund always depended on plaintiffs not owing taxes.

Plaintiffs cite *Bonwit Teller & Co. v. United States,* 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018 (1931). The question in *Bonwit* was whether the taxpayer's suit was barred by the statute of limitations. The Court allowed recovery, stating that the action was not for the overpayment of tax but based "upon the determination evidenced by the certificate issued by the Commissioner. . . ." *Id.* at 265, 51 S.Ct. 395. When plaintiff received the certificate, a cause of action arose regardless of the statute of limitations on refund actions set out in I.R.C. § 6511.

The question here is whether the IRS unequivocally offered to pay plaintiff a determined sum of money. *Bonwit* stands for the proposition that a contract with the Government for a remittance of taxes could exist, irrespective of the statute of limitations on refund suits. The statute of limitations on a refund action here has not expired. *Bonwit* provides another remedy for taxpayers if the elements of an "account stated" are present. It does not hold that taxpayers are entitled to a judgment in their favor in these circumstances.

■ Plaintiffs also contend that the IRS lacked authority to eliminate the credit balance from its account. The "dumping" of the credit into the IRS general fund was arbitrary and capricious and constitutes an assessment that is barred by the applicable statute of limitations, according to plaintiffs.

■ *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932) controls this argument. In Lewis, the administrator of an estate filed a refund action claiming there had been a wrongful assessment of tax. Plaintiff claimed several deductions on the estate's return. The Commissioner disallowed all deductions claimed, but allowed the deduction for attorney's fees. A deficiency was assessed and paid. Plaintiff commenced a refund action. After auditing plaintiff's return, the Commissioner determined that the deduction for attorney's fees had been improperly allowed. A revised computation was made wherein plaintiff owed additional taxes. The Court affirmed the lower court's holding and stated:

> Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded. *Id.* at 283, 52 S.Ct. 145.

Here, plaintiffs claimed a deduction that was subsequently disallowed. The related carryback associated with the loss was not adjusted to reflect the disallowance. The IRS, realizing its mistake kept the credit in satisfaction of plaintiff's debt. The IRS may retain amounts already received to offset a liability without making a new assessment. *Lewis,* 284 U.S. at 283, 52 S.Ct. 145. There was no new assessment made by the IRS in this case.

## CONCLUSION

Plaintiffs presented their claim not as a tax refund case but as a contract case. Account stated is a contract theory, subject to normal rules of Government contract law. Defendant argues that no one with appropriate authority to bind the United States signed an agreement that plaintiffs' refund would be paid. We do not reach that issue because the United States did not issue plaintiffs a promise to pay to start with. The document on which plaintiffs rely is a notice stating that they would receive a refund "if you owe no other obligations. . . ." This is not an unequivocal promise to pay. If it were, plaintiffs cannot show that they accepted the "offer" or that they changed position in reliance thereon.

Because plaintiffs are basing their claim in contract, we do not address the facts that serve as a basis for their claim for refund. Defendant's motion for summary judgment is

GRANTED. The Clerk will dismiss plaintiffs' complaint. No costs.