**Akiva N. GERSTEIN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 01–629T.

United States Court of Federal Claims.

May 2, 2003 *.

Akiva N. Gerstein, Corona, California, pro se.

Elizabeth D. Seward, with whom were Assistant Attorney General Eileen J. O'Connor, Chief Mildred L. Seidman, and Assistant Chief Steven I. Frahm, Court of Federal

* Reissued for publication May 30, 2003, upon defendant's request.

Claims Section, Tax Division, U.S. Department of Justice, for defendant.

<h2 style="text-align:center">ORDER</h2>

WIESE, Judge.

In March 1990, the Internal Revenue Service ("IRS") advised plaintiff, Akiva N. Gerstein, appearing *pro se*, that he would receive a refund of employment tax penalties that the IRS had assessed and collected from him for tax year 1984. Plaintiff alleges that he never received this refund. In his complaint, plaintiff asserts entitlement to a refund of these penalty taxes under three counts: (i) claim for refund; (ii) "account stated"; and (iii) breach of contract.

This case is now before the court on defendant's motions to dismiss Counts I and II for lack of jurisdiction (based on lack of timeliness) and for summary judgment as to Count III. For the reasons set forth below and as explained by the court during oral argument, defendant's motions are granted.

<h2 style="text-align:center">I.</h2>

On May 16, 1985, the IRS assessed a trust fund recovery penalty ("civil penalty") against plaintiff in the amount of $33,496.18 in connection with the failure of his company, Laredo Broadcasting, to remit quarterly employment taxes. That penalty, plus interest and costs subsequently assessed, was charged to plaintiff's December 1984 civil penalty account. Plaintiff satisfied these assessments by direct payments and by credits from other tax periods, ultimately abating the taxes owed under the civil penalty and creating a credit in plaintiff's account.

When plaintiff sold Laredo Broadcasting in March 1990, an IRS representative attended the closing to collect the quarterly employment taxes due the following month. At that time, the IRS employee informed plaintiff that he would receive a refund of approximately $40,000 in penalty taxes paid in 1984.

A refund in the amount of $41,077.03 (including $12,325.69 in interest) was subsequently recorded in the IRS's files as of June

1990, bringing the balance of plaintiff's civil penalty account to zero. Under IRS procedures, such an action would have resulted in the mailing of an explanation for the refund, but it is unclear from the record whether plaintiff ever received such notification. Plaintiff did, however, receive a Form 1099-INT in January 1991 which reflected $12,326 in interest paid by the IRS in 1990. Plaintiff included this amount in the interest income reported on his 1990 federal income tax return.

From the time the IRS representative advised him of the anticipated refund until June 1994, plaintiff claims that he made periodic inquiries at the IRS office in San Antonio, Texas, to determine why he had not received a refund check and whether the filing of a refund claim was necessary. Plaintiff contends that he was repeatedly told that no check had been issued but that the filing of a claim for refund was not required because, in plaintiff's words, "when the check issued, it would show up on his records and a claim could then be filed if the check did not arrive."

In June 1994, plaintiff relocated to Yorba Linda, California, where he again contacted the local IRS office to inquire about his expected refund. Plaintiff maintains that he was once again told that no check had been issued. Thereafter, and then again in 1995, plaintiff requested copies of all of his tax records, purportedly explaining to the IRS "the connection of the tax transactions with [his] business in Texas." These explanations notwithstanding, the records provided to plaintiff did not show the issuance of a refund check.[1]

On September 23, 1997, plaintiff wrote to the Senate Finance Committee about the missing refund check. The Senate Finance Committee in turn referred his inquiry to the IRS Taxpayer Advocate in the South Texas District. In an April 20, 1998, response to plaintiff's inquiry, the Taxpayer Advocate advised plaintiff that "the Trust Fund Recovery Penalty assessed against [him] for nonpay-

---

1. Plaintiff attributes this failure to locate records showing the issuance of a refund check to a fact he has since learned, namely, "that the civil penalties database is separately maintained and that most IRS employees are not familiar with it."

ment of corporate tax liability ... [was] subsequently removed and a refund of $41,077.03 was issued on June 18, 1990."

Plaintiff filed a Taxpayer Statement Regarding Refund, Form 3911, with the Problem Resolution Section of the IRS South Texas District office, dated May 18, 1998, stating that he had not received a refund for 1984. Plaintiff identified the "Type of return" as "Business" but entered no information as to the type of return he had filed with the IRS or the date on which it was filed.

One month later, in a June 19, 1998, letter, the Chief of the IRS Customer Service Division in Austin, Texas, advised plaintiff that the IRS was tracing the missing check and apologized for the delay. The letter went on to say: "If the check hasn't been cashed, you will receive your refund by Sep. 09, 1998. If the check has been cashed, we will send you a copy of the cashed check and a claim form." On July 31, 1998, the Chief of Customer Service provided his final response to plaintiff's inquiry:

> Our records show that your refund check was mailed to you on June 15, 1990, and subsequently cashed. The age of the check makes it impossible to provide any further information about it, and no photocopy is available. Since we have no record of your prior claim of non-receipt on this check, we must assume that you received and cashed it. No further action will be taken on your claim.

On November 2, 1998, plaintiff filed a Claim Against the United States for the Proceeds of a Government Check, Form 1133. On the claim form, plaintiff stated that he had not received a government check.

By letter dated February 4, 1999, the IRS responded to an earlier inquiry submitted on plaintiff's behalf pursuant to an authorized power of attorney. The IRS advised plaintiff that according to information provided by the Department of the Treasury Financial Management Service, a refund check dated June 15, 1990, in the amount of $41,077.03 had been mailed to the address shown on plain-

tiff's tax account at that time and was subsequently cashed. The letter also noted that the refund "included $12,325.96 [in] interest, and therefore the IRS would have issued ... a Form 1099–INT in January 1991, which would have included this amount. Our records show that $12,326.00 interest income was reported on your 1990 Form 1040."

On June 21, 1999, plaintiff filed a second Taxpayer Statement Regarding Refund, Form 3911. This time, plaintiff indicated the "Type of return" as "Individual" and the amount of the refund as $53,402.75. Plaintiff also noted that he "was unaware of this refund initially. Now that he is aware of it he realizes that he never received it."

The Director of the IRS's Austin, Texas, Customer Service Center issued plaintiff a notice of claim disallowance on November 8, 1999:

> This letter is your legal notice that we have disallowed your claim....
>
> We have completed our review of [your] Form 1133 [Claim Against the United States for the Proceeds of a Government Check] and the evidence you provided. Our records show that your check was cashed and we believe you benefitted from the check. Since the information you sent did not prove otherwise, we can not take further action.

On December 26, 2001, a manager of the Check Claims Branch of the Financial Processing Division of the Department of the Treasury responded to an earlier inquiry from the IRS concerning the allegedly missing check:

> The Department of the Treasury maintains records of paid Federal government checks for six years and seven months in accordance with 31 U.S.C. 3702 9(b). Under Treasury's record retention procedures, paid checks are kept for six years and seven months and then are destroyed. Therefore, we are unable to provide you with a copy of the check.[2]

---

2. Pursuant to IRS procedures, then, records of a check issued to plaintiff on June 15, 1990, would have been destroyed in early 1997.

## II.

In deciding this case in defendant's favor, we start from the premise that where the IRS volunteers to abate a tax and informs a taxpayer that it intends to issue a refund, it is, in effect, conceding that the tax was unlawfully assessed and collected. If the IRS thereafter fails to issue such a refund, the affected taxpayer is entitled to sue here to assert a claim for money on the basis of an "account stated." *West Publ'g Co. Employees' Preferred Stock Ass'n v. United States*, 198 Ct.Cl. 668, 675, 1972 WL 20800 (1972). As the court explained in *West Publishing*, such an action "is based on the common law concept that an implied contract arises when a debtor (the Service) submits to a creditor (the taxpayer) a statement of the final balance due on an account and the creditor agrees to accept the proposed balance to close the account." *Id.* Under this view of the matter, then, the timeliness of plaintiff's claim is to be examined in light of the statute of limitations that is generally applicable to suits for the recovery of money in this court as opposed to the more restrictive limitations period applicable to tax refund suits in general. *See* 198 Ct.Cl. at 675, 677.

The relevant statute, 28 U.S.C. § 2501 (2000), provides, in part, that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The phrase "first accrues" has been defined to mean "when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Nager Elec. Co. v. United States*, 177 Ct.Cl. 234, 368 F.2d 847, 851 (1966).

In the application of this standard, the law charges an individual with knowledge not only of those events whose occurrence was evident for all to see, but also of such events that reasonably attentive concern to one's affairs would bring to light. " 'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is [also] notice of every thing to which such inquiry might have led.' " *Wood v. Carpen-*

*ter*, 101 U.S. (11 Otto) 135, 141, 25 L.Ed. 807 (1879) (quoting the early English Chancery case, *Kennedy v. Greene*, 3 Myl. & K. 722). Assessed in light of this standard, plaintiff's suit in this court is clearly time barred.

As the facts show, plaintiff received a Form 1099–INT in January 1991 reflecting the IRS's payment to him in 1990 of interest in the amount of $12,326. Although plaintiff apparently did not take heed of this information at the time of its receipt, he is nevertheless charged with its knowledge. Because plaintiff was informed in plain terms that a payment had been made to him by the IRS, it was up to plaintiff, in the proper management of his affairs, to verify that a check in the stated amount had in fact been received, and, if not, to take such steps as the IRS's procedures might require. Had plaintiff conducted his affairs with this minimum degree of diligence, his decade-long pursuit of an allegedly missing IRS check never would have become necessary. The issue would have been resolved years ago.

Plaintiff cannot avoid the consequences of his own neglect by claiming to have been misled by IRS representatives advising that his tax records showed no issuance of a check and that no action on his part would be necessary until a check was in fact issued. Proper attention to his affairs would have alerted plaintiff immediately to the apparent contradiction between the payment information recorded on the Form 1099 and the absence of any indication of such a payment in his tax records. Indeed, the discrepancy would have been equally apparent to the IRS representatives had they been informed of plaintiff's receipt of a Form 1099 showing the payment of interest in 1990.

The facts demonstrate that as of 1991, plaintiff was in possession of information sufficient to have put him on notice that something was awry in his tax affairs, the resolution of which demanded more formal action on his part than occasional inquiries at the local IRS office. We conclude, therefore, that plaintiff's claim accrued no later than 1991.

But even if we were to assess this case without imputing to plaintiff knowledge of

the information contained in the Form 1099, we would not find plaintiff's actions reasonable or his claim timely. Believing that a check for the refund of penalty taxes was due him but had not been received, plaintiff did not act reasonably in postponing for over seven years the initiation of any formal action to recover this expected refund. Not having received his refund check more than a year after its payment was expected, plaintiff could have sued then for its recovery. The commencement of suit in this court on November 7, 2001, comes a decade after the claim first accrued and, thus, nearly four years after the expiration of the statute of limitations.

As was noted above, plaintiff characterizes his claim not only as a suit for a tax refund or, more particularly, as a demand on an account stated, but also as a claim for money based on a breach of contract. This alternative formulation for relief adds nothing of substance to plaintiff's underlying claim.

Plaintiff bases this claim on the letter he received from the IRS Customer Service Division in Austin, Texas, on June 19, 1998, advising that "[i]f the [reportedly missing] check hasn't been cashed, you will receive your refund by Sep. 09, 1998 ... [and if] the check has been cashed, we will send you a copy of the cashed check and a claim form." Plaintiff construes this letter as a promissory commitment by the IRS which it subsequently failed to honor and for which he is now entitled to seek damages.

Plaintiff is mistaken in his understanding of the significance of the IRS's letter. Contracts are formed through an exchange of promises, usually expressed in the form of an offer and acceptance. We do not have such an exchange here. To the contrary, the IRS's letter was simply an explanation—provided in response to a taxpayer inquiry—of the procedure the agency would follow if in fact plaintiff's records revealed that a check had not been issued or, if issued, had not been cashed by plaintiff. The exchange between plaintiff and the IRS amounts to nothing more than a routine response to a routine inquiry. There was no contract created through this exchange.

## CONCLUSION

For the reasons set forth above and as explained by the court during oral argument, defendant's motion to dismiss Counts I and II of plaintiff's complaint is GRANTED and defendant's motion for summary judgment with respect to Count III is GRANTED. The Clerk shall enter judgment accordingly. No costs.