**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2159

In re: Promise Healthcare Group, LLC, et al., Debtors

ROBERT N. MICHAELSON, of Advisory Trust Group,
LLC, solely in his capacity as liquidating trustee and debtor
representative of the Promise Healthcare Group
Liquidating Trust,
Appellant

On Direct Appeal from the United States Bankruptcy Court
for the District of Delaware
(Bankruptcy Court No.: 18-12491)
District Judge: Honorable Craig T. Goldblatt

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on February 11, 2025

(Filed: March 3, 2025)

Before: RESTREPO, PORTER, and RENDELL, *Circuit
Judges*.

Matthew Sarna
DLA Piper
1201 N Market Street

Suite 2100
Wilmington, DE 19801

Boris J. Mankovetskiy
Andrew H. Sherman
Sills Cummis & Gross
The Legal Center
One Riverfront Plaza
Newark, NJ 07102

　　　　*Counsel for Appellant*

William A. Hazeltine
William D. Sullivan
Sullivan Hazeltine Allinson
919 N Market Street
Suite 420
Wilmington, DE 19801

Robert K. Hill
Seitz Van Ogtrop & Green
222 Delaware Avenue
Suite 1500, P.O. Box 68
Wilmington, DE 19801

　　　　*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, *Circuit Judge*.

Promise Healthcare Group, LLC and its affiliates ("Debtors"), the debtors in this appeal, operated various short and long-term hospital and nursing facilities throughout the country. Appellant Robert Michaelson ("Trustee") filed this direct appeal in his capacity as liquidating trustee and debtor representative of the Promise Healthcare Group Liquidating Trust. The Trustee takes issue with the Bankruptcy Court's allowance of a medical malpractice claim that Appellee Patrick Wassmann filed during the Debtors' Chapter 11 proceedings based on his treatment at one of Debtors' facilities between March 15 and June 9, 2017. The Trustee urges that Wassmann's claim should not have been allowed because it is time barred. That is so, the Trustee reasons, because even though the claim was timely as of the petition date—November 5, 2018—it became untimely by the time the Trustee objected to it and it was evaluated. He urges that the latter date, and not the petition date, is the appropriate reference point for evaluating a claim's validity. The Trustee also urges that Wassmann's claim is barred because Wassmann failed to file a timely state court complaint in addition to his Chapter 11 proof of claim.

Judge Goldblatt concluded, in a well-reasoned memorandum opinion, that the Trustee's arguments have no basis in the Bankruptcy Code. We agree, and will therefore affirm the Bankruptcy Court's order.

I.

Debtors filed a Chapter 11 bankruptcy petition on November 5, 2018, triggering an automatic stay of all actions against them. The Bankruptcy Court set a bar date—that is, the deadline for filing proof of claims—of May 31, 2019. Wassmann filed a $10 million proof of claim on January 4,

3

2019 based on allegedly negligent care he had received in one of Debtors' facilities between March 9 and June 15, 2017. The Court entered an order confirming Debtors' reorganization plan on September 17, 2020, and the plan went into effect on October 1, 2020.[1] Wassmann had until November 1, 2020 to proceed against Debtors in state court.[2] He opted not to do so; he seeks recovery in the Bankruptcy Court alone.

The Trustee filed a motion for summary judgment asking the Bankruptcy Court to disallow Wassmann's claim on

[1] On June 13, 2019, the automatic stay notwithstanding, Wassmann filed a complaint in state court. The Trustee and the Bankruptcy Court agreed that this complaint was void because it was filed in violation of the automatic stay. *See* Joint Appendix ("J.A.") 21 n.40; *see also In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) ("[A]ctions taken in violation of the [automatic] stay are void."). While Wassmann raised arguments below that his complaint was not void, as it was not subject to the automatic stay, all parties now agree that the June 13, 2019 filing was essentially a nonevent for present purposes.

[2] The parties agree that Wassmann's medical malpractice claim tied to his alleged injuries is subject to a two-year statute of limitations under applicable Florida law. *See* Fla. Stat. Ann. § 95.11(4)(c) (2023). The parties also agree that, absent the automatic stay, the limitations period would have expired during the pendency of the bankruptcy proceedings. But 11 U.S.C. § 108(c)(2) provides that a non-bankruptcy limitations period that would have otherwise expired during Chapter 11 proceedings does not expire until 30 days after notice of the termination or expiration of the automatic stay. Here, in accordance with the plan, the automatic stay ended on the plan's effective date, October 1, 2020. Thus, if Wassmann

February 17, 2023. The Bankruptcy Court denied the motion on April 20, 2023. The Trustee filed the instant appeal on May 4, 2023.[3]

In denying the Trustee's motion, the Bankruptcy Court reasoned that (1) the claims allowance process set forth under 11 U.S.C. § 502 asks whether a claim was allowable as of the petition date, and (2) a creditor who has filed a timely proof of claim need not also file a timely non-bankruptcy complaint to preserve its claim. Because Wassmann filed a proof of claim that was not time-barred as of the petition date, the Bankruptcy Court rejected the Trustee's contention that Wassmann's claim should be barred as untimely.

---

wished to pursue a state court action, he would have had to do so before November 1, 2020.

[3] One week later, the Trustee filed an objection to the claim in Bankruptcy Court. On June 9, 2023, Judge Goldblatt issued an order explaining that, because Wassmann's claim is a personal injury claim, 28 U.S.C. §§ 157(b)(2)(O), (b)(5) require it to be "tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending," *id.*, unless the parties consent to having the dispute proceed before the bankruptcy court, J.A. 113–14 (citing *In re Trib. Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018)). The parties responded that they did not consent to having the dispute proceed before Judge Goldblatt. Thus, should we affirm the Bankruptcy Court's order denying the Trustee's motion for summary judgment, Wassmann's claim will be tried in district court.

5

The Trustee then moved for leave to appeal the Bankruptcy Court's interlocutory order directly to this Court. The District Court granted the motion and certified the Bankruptcy Court's Order for appeal to this Court pursuant to 28 U.S.C. § 158(d)(2)(A)(i) and (iii), concluding that the question of "[w]hether the determination of a claim's validity is made as of the petition date" "'involves a question of law as to which there is no controlling decision of' the Third Circuit or Supreme Court" and "'may materially advance the progress of the case or proceeding in which the appeal is taken,'" given that reversal would "end[] any further litigation of [Wassmann's] large and complex personal injury claim." J.A. 162–63 (quoting 28 U.S.C. § 158(d)(2)(A)(i)–(ii)).

We granted Debtors' petition for leave to appeal and asked the parties to focus exclusively on (1) whether "unenforceability" under § 502(b) is to be determined as of the petition date, or as of the time an objection is lodged; and (2) whether, to protect his claim, a claimant has an affirmative obligation to bring a separate tort suit against the debtor before the expiration of the applicable statute of limitations.

## II.[4]

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim—*i.e.*, a document providing proof of a 'right to payment,' 11 U.S.C.

---

[4] The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157. We have jurisdiction pursuant to 28 U.S.C. § 158(d)(2)(A). We review the Bankruptcy Court's legal determinations *de novo*. *In re Trump Ent. Resorts*, 810 F.3d 161, 166–67 (3d Cir. 2016).

§ 101(5)(A)—against the debtor's estate." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007). Section 502(a) of the Bankruptcy Code provides that each such claim "is deemed allowed" unless a party in interest objects. 11 U.S.C § 502(a). If a party in interest objects, § 502(b) provides, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount," *id.*, unless certain circumstances are present, including if "such claim is unenforceable against the debtor . . . under any agreement or applicable law," *id.* § 502(b)(1).

In *Travelers*, the Supreme Court clarified that § 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." 549 U.S. at 450. Thus, the Bankruptcy Court should not have allowed Wassmann's claim if it was untimely under Florida's two-year statute of limitations. *See* Fla. Stat. Ann. § 95.11(4)(c) (2023).

The Trustee urges that Wassmann's claim should have been disallowed because at the time the Bankruptcy Court assessed the claim's allowance, the statute of limitations had expired, and Wassmann had not filed a timely complaint in state court. This argument rests on two propositions: (1) bankruptcy courts should assess whether a claim is allowed as of their evaluation date, rather than the date the petition was filed; and (2) a creditor must file a timely non-bankruptcy action prior to the expiration of the limitations period to protect its bankruptcy claim. We conclude that a plain read of the Bankruptcy Code belies both of the Trustee's positions. Thus,

7

we will affirm the Bankruptcy Court's order denying the Trustee's motion for summary judgment.

## A. "Unenforceability" under § 502(b) is determined as of the petition date.

First, the Trustee urges that the Bankruptcy Court should have assessed 11 U.S.C § 502(b)(1) "unenforceability" as of its evaluation date (April 20, 2023), rather than the petition date (November 5, 2018). Wassmann urges that the plain text of § 502 suggests that § 502(b) unenforceability should be determined as of the petition date, as it states that the court "shall determine the amount of such claim . . . *as of the date of the filing of the petition*" and "shall allow such claim . . . except to the extent that . . . such claim is unenforceable." 11 U.S.C. § 502(b) (emphasis added). The Trustee urges that a better reading of the statute is that courts are to assess the *amount* of claims as of the petition date, and the *validity* of claims as of the evaluation date. These differing interpretations are consequential because it is clear from the record that Wassmann's claim was timely as of the petition date and untimely as of the evaluation date. Neither the Supreme Court nor this Court has spoken to whether § 502(b) unenforceability is to be determined as of the petition date, or as of the date at which the court evaluates the claim. We now clarify that the petition date is the proper reference point.

Wassmann's position is better supported by the Bankruptcy Code and persuasive authority. First, as the Bankruptcy Court explained, the plain text of § 502(b) supports Wassmann's position. Section 502(b) provides that, where an objection is made to a claim, the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and

8

shall allow such claim" except where, among other situations, "such claim is unenforceable against the debtor" under non-bankruptcy law, 11 U.S.C. § 502(b)(1), or where "such claim is for unmatured interest," *id.* § 502(b)(2). The Supreme Court has long interpreted § 502(b)(2) as a "general rule disallowing postpetition interest." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 373 (1988). Thus, "such claim" as it is used in § 502(b)(2) must refer to the claim as it existed on the petition date—otherwise, as the Bankruptcy Court explained, "a claim for interest that matured between the petition date and the date of the resolution of the claim objection would be allowed," which directly contravenes the Supreme Court's interpretation of § 502(b)(2). J.A. 16. It follows, *a fortiori*, that § 502(b)(1) likewise instructs courts to assess whether "such claim[s]" are enforceable against the debtor as of the petition date, rather than the date at which the court considers claim allowance. *See United States v. Norwood,* 49 F.4th 189, 207 (3d Cir. 2022) ("It is a 'standard principle of statutory construction . . . that identical words and phrases within the same statute should normally be given the same meaning.'" (quoting *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 617 (3d Cir. 2015))).

The text of other § 502 provisions also supports Wassmann's read. Unlike § 502(b), several provisions of § 502 direct courts to view claims with reference to times *other than* the petition date, indicating that unless otherwise specified, the petition date is the relevant reference point. For instance, § 502(e) provides that a court should disallow a claim for reimbursement or contribution that "is contingent *as of the time of allowance or disallowance of such claim*." 11 U.S.C. § 502(e) (emphasis added). Section 502(f) provides that a claim arising "after the commencement of the case but before

9

the earlier of the appointment of a trustee and the order for relief *shall be determined as of the date such claim arises*." *Id.* at § 502(f) (emphasis added). If Congress wanted bankruptcy courts to assess claim enforceability as of the evaluation date, not the petition date, it presumably would have said as much in § 502(b). *Cf. In re Eriksen*, 647 B.R. 192, 195–96 (Bankr. N.D. Ohio 2022) ("Where Congress deemed post-petition developments relevant to the claims allowance process, it enacted provisions to address such situations. . . .").

This interpretation accords with principles underlying the Code. Bankruptcy law generally presumes that the petition date "fixes the moment when the affairs of the bankrupt are supposed to be wound up." *Sexton v. Dreyfus*, 219 U.S. 339, 344 (1911) (Holmes, J.); *see also* Douglas G. Baird, *The Elements of Bankruptcy* 84 (7th ed. 2022) (explaining that a key concept underlying the Bankruptcy Code is that, as of the petition date, each creditor's non-bankruptcy right to the debtor's estate is "transformed" into a bankruptcy claim). As the Bankruptcy Court explained, "[t]he petition date is, in essence, a 'day of reckoning,' consolidating the debtors' present and future obligations into one moment for prompt resolution." J.A. 19.

We also observe that the Trustee's read of § 502(b) as applied to this case contravenes the purpose of statutes of limitations: to ensure that parties do not sit on their rights and then "unfair[ly] surprise" defendants with "stale claims." *Coello v. DiLeo*, 43 F.4th 346, 351–52 (3d Cir. 2022) (quoting *Kreiger v. United States*, 539 F.2d 317, 322 (3d Cir. 1976)). Here, the claimant did not sit on his rights, and there is no risk of unfair surprise: Wassmann filed his proof of claim by the bar date, and within the limitations period.

10

Finally, while no binding precedent dictates the outcome of this appeal, out-of-circuit case law supports Wassmann's position. In *In re Racing Servs., Inc.*, the Eighth Circuit Bankruptcy Appellate Panel suggested that a defense that became available post-petition would not render a claim unenforceable, because "[a] plain reading of § 502(b) suggests that the bankruptcy court should determine whether a creditor's claim is enforceable against the debtor *as of the date the bankruptcy petition was filed*." 619 B.R. 681, 688 (B.A.P. 8th Cir. 2020) (emphasis added).

Similarly, in *In re Flanagan*, the Court of Appeals for the Second Circuit rejected an argument that a post-petition settlement agreement, which included mutual releases of claims, rendered claims unenforceable in the bankruptcy proceeding. 503 F.3d 171, 178–79 (2d Cir. 2007). The *Flanagan* court reasoned that § 502(b)'s instruction that courts "determine the amount of such claim . . . *as of the date of the filing* of the petition" is best read to mean that bankruptcy courts should assess claim allowance as of the petition date. *Id.* at 179 (quoting 11 U.S.C. § 502(b) (emphasis in original)). *See also In re Brown*, 606 B.R. 40, 46 n.6 (B.A.P. 9th Cir. 2019) ("Taken together, [§§ 502 and 558] establish that '[p]ost-petition conduct . . . cannot justify disallowing a proof of claim.' . . . The post-petition running of the statute of limitations should not be the basis for disallowance of a valid prepetition claim . . . ." (quoting *Sears v. Sears (In re Sears)*, 863 F.3d 973, 978 (8th Cir. 2017))); *In re Ricks*, No. 09-00215-JDP, 2010 WL 4257598, at *4 (Bankr. D. Idaho Oct. 27, 2010) ("Section 502(b)(1) requires a determination of the allowance and amount of a claim as of the date of the filing of the petition." (quotation marks omitted)).

Appellant cites *Melikian Enters., LLLP v. McCormick*, 863 F.3d 802 (8th Cir. 2017), for the proposition that courts may consider post-petition events when assessing the allowance of claims under § 502. Without passing upon whether *Melikian* was rightly decided, we observe that it dealt with a factual scenario that is not analogous here.

The relevant law in *Melikian* was Arizona's anti-deficiency law, which requires creditors to file a deficiency action within 90 days of a foreclosure sale in order to have a right to recover a deficiency.[5] *Id.* at 807. The creditor, Melikian Enterprises, LLLP ("Melikian"), had commenced a deficiency action on August 2, 2012, prior to the August 29, 2012 petition date and prior to the October 9, 2012 foreclosure sale. *Id.* at 804. Following the post-petition sale, where Melikian purchased the property at issue, Melikian did not perfect service of its deficiency suit, and the Arizona court dismissed the suit on January 30, 2013. *Id.* Because Melikian did not file a deficiency action within 90 days of the trustee's sale, and because the August 2 deficiency suit was dismissed, the *Melikian* court concluded that Melikian's claim was disallowed. *Id.* at 806–08. As the Trustee points out, it appears

---

[5] The relevant law provided:

> If no action is maintained for a deficiency judgment within the time period prescribed in subsections A and B of this section, the proceeds of the sale, regardless of amount, shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist.

Ariz. Rev. Stat. Ann. § 33-814(D).

12

from the *Melikian* court's reasoning that post-petition events were relevant to the court's claim allowance determination. For instance, if Melikian had perfected service and pursued its deficiency action in October 2012 (after the August 29, 2012 petition date), it seems that the court would have considered those post-petition events and allowed the claim.[6] *See id.* at 804–06.

*Melikian* does not undermine our conclusion here. First, the question presented before the *Melikian* court was whether "the Bankruptcy Code—specifically 11 U.S.C. §§ 362 and 502—impliedly preempts Arizona['s anti-deficiency] law." *Id.* at 806.[7] While the court insinuated that post-petition events were relevant to its claim allowance determination, it did not

---

[6] The court "f[ou]nd it unnecessary to address" Melikian's argument that the automatic stay made it impossible to comply with the state law's 90-day time limit. *Melikian*, 863 F.3d at 807. It reasoned that, even if the automatic stay prevented Melikian from filing a deficiency action within 90 days of the sale, Melikian still needed to file such an action after the stay was lifted in accordance with § 108's time limits. *Id.* at 808. Because he did not do so, he failed to comply with the state anti-deficiency law. Here, too, the court appeared willing to consider post-petition events in its claim allowance decision.

[7] The court concluded that it did not, citing the "general presumption against finding implied preemption," *Melikian*, 863 F.3d at 806 (quoting *Mo. Bd. of Exam'rs for Hearing Instrument Specialists v. Hearing Help Express, Inc.*, 447 F.3d 1033, 1035 (8th Cir. 2006)), and the Supreme Court's instruction to "consult state law in determining the validity of most claims," *id.* at 807 (quoting *Travelers*, 549 U.S. at 450).

13

squarely consider whether such events are invariably relevant to the claim allowance process. *See id.* at 808–09.

Next, *Melikian* at most suggests that it may be appropriate to consider post-petition events where the applicable law requires that a claim be accompanied by a separate action or event, and that separate action or event was or should have been commenced post-petition. This reading comports with the Bankruptcy Court's discussion of *In re Benanti*, No. 15-71018, 2018 WL 1801194 (Bankr. C.D. Ill. Apr. 13, 2018). *Benanti* reasoned that "in determining whether [a claim is] contingent, it is appropriate to consider all facts and circumstances—not just those in existence on the petition date" because "ignor[ing] the realities of a situation simply because they did not exist at the time of the petition would be unconscionable." *Id.* at \*7; *cf. In re Rappaport*, 517 B.R. 518, 537–42 (Bankr. D.N.J. 2014) (considering post-petition events in its estimation of a contingent, unliquidated claim). Under this reasoning, a court should not allow a bankruptcy claim where the creditor recovered the amount owed by the debtor in a post-petition foreclosure sale or where, as in *Melikian*, after the petition date, the creditor failed to comply with state procedures for recovering a deficiency judgment. On the whole, even if *Melikian*'s holding finds support in the Bankruptcy Code, it does not guide our decision here. Unlike in *Melikian*, Wassmann's claim, and its enforceability under state law, was not dependent on any post-petition events. *Melikian* does not move the ball here; there is no reason we would not evaluate Wassmann's claim as of the petition date.

Similarly, the Trustee's citation to *In re Ernst*, 382 B.R. 194 (S.D.N.Y. 2008), is of no moment. The *Ernst* court concluded that "[w]hile section 502 requires that the amount of a claim be determined as of the date of the filing of th[e]

14

petition, there is nothing in [section 502] that requires a court to ignore that the claim is no longer valid under state law." *Id.* at 199. The *Ernst* court then explained that a claim was disallowed where, after the petition date, a state court decision altered the applicable law such that the claim was no longer permitted under state law. *Id.* at 198–99. But as the Bankruptcy Court explained here, *Ernst* does not compel courts to consider post-petition facts in claim allowance decisions. *Ernst* merely "stands for the unremarkable proposition that judicial decisions are generally given retroactive effect." J.A. 23.

All in all, the Bankruptcy Code and persuasive authority support the Bankruptcy Court and Wassmann's read of § 502(b). The Bankruptcy Court correctly determined that, as of the petition date, Wassmann's claim was timely, and so it was allowed.

**B. There is no requirement that a creditor who has filed a proof of claim bring a separate, timely suit against the debtor to protect its claim.**

The Trustee also urges that Wassmann should have filed a state court complaint before November 1, 2020 to protect his bankruptcy claim, as "timely filing a proof of claim is a necessary but insufficient step to preserve that claim where a statute of limitations subsequently expires." Appellant's Br. 12. The Trustee contends that this reading must be correct because § 108(c)(2) would be rendered superfluous if filing a proof of claim obviates any need to file a timely complaint outside of bankruptcy proceedings. Not so.

Section 108(c)(2) provides that a limitations period that would otherwise expire during the automatic stay imposed in a bankruptcy proceeding shall not expire until "30 days after

15

notice of the termination or expiration of the stay." 11 U.S.C. § 108(c)(2). So, the argument goes, there must be a requirement to file a timely, non-bankruptcy complaint in addition to filing a timely proof of claim; otherwise, § 108(c)(2) would be meaningless.

In support of this argument, the Trustee relies on *Rhodes v. C&G Excavating, Inc.*, No. CIV.A.98-6274, 1999 WL 820204 (E.D. Pa. Sept. 29, 1999). In *C&G*, as here, a claimant filed a proof of claim without filing a separate state court complaint. *Id.* at *1. The *C&G* court disallowed the claim, citing no precedent and reasoning that "[i]f, as [the claimant] suggests, a complaint is irrelevant following the filing of a proof of claim, then § 108(c) is purely statutory surplusage." *Id.* Therefore, the *C&G* court concluded, § 108(c) required the claimant to file a separate action in district court. *Id.*

Like the Bankruptcy Court, we find the *C&G* court's reasoning unpersuasive. To demonstrate the flaws in the *C&G* court's reasoning, the Bankruptcy Court offered the following hypothetical:

> Consider a claim against an individual chapter 7 debtor that would be nondischargeable under § 523(a)(2) on the ground that the debtor had defrauded a lender into extending credit. Such a creditor may recover its *pro rata* share out of the bankruptcy estate by filing a timely proof of claim. To the extent the creditor seeks and obtains a determination from the bankruptcy court that the debt is nondischargeable, however, the creditor would typically be left to proceed outside of bankruptcy to obtain or enforce a

16

judgment against the debtor to recover on the balance of the claim out of the debtor's post-bankruptcy assets. But without relief from the stay, that action could not be brought until after the conclusion of the chapter 7 case. The work done by § 108(c) is that, if the statute of limitations would otherwise expire during the bankruptcy case, this extension of time permits the creditor to wait until after the bankruptcy case has concluded before bringing that non-bankruptcy litigation.

J.A. 29–30. This hypothetical demonstrates that § 108(c) plays an important role where a debt has been determined to be nondischargeable. For that reason, the Trustee is wrong that § 108(c) has no applications if the "requirement" he proposes does not exist.

The Trustee also cites to *Mamer v. Apex R.E. & T.*, 59 F.3d 780 (8th Cir. 1995), *Bennett v. U.S. Lines, Inc.*, 64 F.3d 62 (2d Cir. 1995), and *McKinney v. Waterman S.S. Corp.*, 925 F.2d 1 (1st Cir. 1991), in support of his contention that a creditor must file a separate timely action in addition to a proof of claim. But each of those cases involved a non-bankruptcy action that was dismissed as untimely, as it was not filed within the applicable limitations period, including the period allotted by § 108(c). *See Mamer*, 59 F.3d at 781, 783; *Bennett*, 64 F.3d at 66–67; *McKinney*, 925 F.2d at 6. *Mamer*, *Bennett*, and *McKinney* do not stand for the proposition that one *needs* to file a separate, timely action in addition to filing a proof of claim. Rather, they stand for the proposition that if one chooses to file a separate action, it must be brought in the time allotted under § 108(c).

17

As these cases demonstrate, § 108(c) does its primary work with respect to claims not resolved through the bankruptcy process—for instance, claims disallowed (for non-merits reasons) or not discharged, or claims arising during the proceedings that can still be pursued after the bankruptcy proceedings are concluded. And, as with the cases relied upon by the Trustee, § 108(c)'s import lies in the principle that *if* a party chooses to bring a claim after the automatic stay is lifted, she must adhere to § 108(c)'s time limit, rather than a principle that she *must* file an action after the automatic stay is lifted. But Wassmann has not pursued a separate action post-confirmation. Section 108(c) is not relevant to the instant dispute.

## III.

In sum, the Bankruptcy Court was correct in assessing the enforceability of Wassmann's claim with reference to the petition date. The Bankruptcy Court was also correct in concluding that Wassmann was not obligated to file a separate tort suit after the stay was lifted. Accordingly, we will affirm the Bankruptcy Court's order denying the Trustee's motion.